MARKS CONSTRUCTION COMPANY, LIMITED, AN HAWAIIAN CORPORATION, *v.* FRED JAMES MASER.

No. 1766.

ARGUED SEPTEMBER 30, 1927.          DECIDED OCTOBER 19, 1927.

PERRY, C. J., BANKS AND PARSONS, JJ.

164

OPINION OF THE COURT BY PERRY, C. J.

(Parsons, J., dissenting.)

This is an action of assumpsit for work and labor done and materials furnished by the plaintiff in the construction of several structures on premises of the defendant. Four causes of action are set forth in the declaration. In the first the claim is for $659.65 for the making of a cesspool; in the second the claim is for $489 for certain "excavation and grading"; in the third, for $510 for constructing a swimming tank and a top for the cesspool above mentioned; and in the fourth, for $401.37 for the building of certain steps, sidewalks and walls. Liability under the first and fourth causes of action was expressly admitted by the defendant. The trial was before a jury. Not including the time consumed in choosing the jury, the trial lasted for six days. On the sixth day, March 10, 1927, at 3:55 P.M. the jury, after receiving the instructions of the presiding judge, retired to consider its verdict. At 9:43 P.M. in open court a juror volunteered the information to the court that the jury stood eleven to one. At 10:30 P.M. the jury retired for the night, reconvening at 8 A.M. on the following day. At 1:30 P.M. of March 11 a juror complained to the judge

in his chambers that he had been, to quote his own language, "beaten up" by the other jurors or some of them. Upon inquiry by the judge, the jury denied that there had been any "beating up" and referred to the occurrence as "horseplay". At 4:12 P.M. of that day, it appearing from the answers of the jurors to the presiding judge that the jury was still unable to agree upon a verdict, the following proceedings were had and instructions given by the presiding judge to the jury:

"The court: gentlemen of the jury, you have had this case under consideration for twenty-four hours, perhaps more.

"The court asked you last night if there were any questions of fact or the testimony of any particular witness on any particular point that you wished read to you. I want to ask you again if there is any question of fact which any juror desires the testimony of any particular witness discussed—

"Mr. Heine (a juror) Your honor, the case seems absolutely beyond control, absolutely now. I thought last night that we could come to an agreement.

"The court: The court doesn't care to know the division of the jury at all; I am simply concerned with whether the court can assist in obviating the cause of differences, without regard to how many are on one side and how many on another. If there is anything of law that the court could further advise the jury on the court is in a position to consult with the attorneys on that matter and clarify any such point of law. Has any individual juror any question of that sort?

"I take it by the silence of the jury that either you don't know how to express the point of law or there isn't any point of law that any juror feels the instructions heretofore given raise a confusing issue on in his mind.

"A juror: As far as I am concerned the instructions are very clear. Some of the other jurors might want some instructions, but—

"The court: The court will put it this way, if there is any juror that is mixed up on the instructions, what is the mix-up on the instructions?

"The court would like to point out to the jury that the instructions that have been given to the jury are entirely binding upon you. The law in the case, according to our system of jury trials, is for the court to line up and set forth, but the facts of the case, the credibility of the witnesses and the inferences to be drawn from the testimony of the witnesses is a province of the jury which this court neither can interfere with nor desires to interfere with; that is entirely in the hands of the jury; but the law as applied to those issues of fact, whether you disagree with the court or not, are binding in this case, and if the court is in error the parties, by their exceptions, have their methods of protecting themselves. But in the instructions which the court has given so far as you twelve men are concerned those are the measure of the legal side of the issues before you.

"Now, will you bear in mind that we are in a community of law. We have a tribunal for settling disputes by calm deliberation and reasoning, and not in the old manner of getting champions to see who is the stronger in point of arms; and that system will break down as a system unless we can reach decisions. If this case were a case submitted to this court, without a jury, and this court were called upon to decide, the court would have to decide the case; it couldn't ignore its duty, and, in deciding cases, we oftentimes, in disputes, have to apparently hurt one side to the benefit of another side, but that is an element in all disputes, and that is why we have a tribunal of jurymen to decide, to give the parties in cases the benefit of the best judgment of twelve men instead of the individual judgment of one man. And, in that jury system, it is not expected that those decisions are going to be perfect; we are human beings and those decisions have to be as near right as twelve human beings can make it right, getting the differences adjusted between twelve different points of view after hearing the evidence, and the question then comes down to the matter of discussion and deliberation by the jurymen, which naturally means, there being two sides to a case, that there are possibilities of divergence of opinion, and often in those divergences of opinion there is the element of majorities

and minorities. Whether the minority is right or whether the majority is right is immaterial to this court; this court isn't trying to punish either minorities or majorities. I want you to get that clearly in your heads. It doesn't make a particle of difference to this court. But it is the duty of the court to point out to you, gentlemen of the jury, that disputes have got to end somewhere, and some jury has got to decide this case, as near right as jurors can decide it.

"You have had the facts presented by witnesses and argued by counsel. You have had the law given in the instructions. Now, there is the point where we end and you begin. The court wants to urge upon you to consider the fact that when the community pays for this kind of a tribunal, when the parties are put to the expense of this kind of a trial, that it is expected from the community standpoint, from the parties' standpoint, that the best judgment of twelve men, in so far as it is possible to arrive at a verdict, be used to arrive at a verdict; and the court would like to have you deliberate upon that serious situation, that in a matter of this character, which is no more complex than you and I have to decide in every day life and decisions, sometimes wrong and sometimes right, have to be reached, a decision should be reached here just as a decision would have to be reached if I had the duty to perform that you have. And I want to make it clear to you gentlemen that I haven't any province to punish anybody or desire to punish anybody.

"It is an unpleasant task at times to decide cases; we oftentimes have to decide cases in which our friends or friends of our friends are involved, but decisions have to be made somewhere, some time, and seriously, gentlemen, consider the jury system and the oath that was taken at the beginning of the trial by each of you to render an impartial verdict.

"The court would like to have you go forward and see if you can't reach a verdict along that line, because the court feels as some of the jurors have expressed themselves, though not intimating thereby that the court knows or cares to know or that it would make any difference what the particular view of any particular juror might

be. There are the facts and there are the witnesses and the issues and the law that you have in the instructions. Now, if there is any point in those facts bearing upon the province of the jury as to credibility of witnesses or as to the facts as between this and that witness's statements that can be straightened out by going back to the record, that is what the court is here for, to help you; or if there is any inconsistent point of law, and by inconsistent I mean that, you feel that you have been instructed by two instructions that appear to you inconsistent, that raise doubts in your mind, let's get rid of that inconsistency or find out where it lies, if anywhere. Is there any point that any juror desires to be straightened out on?

"A juror: Your honor, the instructions seem to be very clear; everybody is satisfied with them. We have read them over a couple of times and no question of law— but it seems to be hopeless to agree.

"The court: On that question of hopelessness to agree, let me again appeal to your sense of American systems, that we rule by majorities, and, again, we rule by intelligent minorities. Sometimes the reasoning of the minority, if deliberately expressed, convinces one's mind, sometimes it does not, but the majority, by reason of the fact of their being a majority, thinking along one line, has its weight; it is not a coercive weight, but it has and should have its place in deliberative bodies.

"Consider those various lines and see, gentlemen, if you can't conclude this case in some manner, so that both the court and parties and the community will know where we are at. Let's see if we can't get somewhere."

At 4:26 P. M. the jury again retired for further consideration of the verdict. At 6 P. M. it was taken to dinner, returning to the jury room at 7. P. M. At 7:40 P. M. a verdict was rendered. In addition to awarding to the plaintiff the two undisputed items, the jury found in its favor for the full amount claimed in the second cause of action and for $300 out of $510 claimed in the third cause of action. The case comes to this court upon the sole exception of the defendant to the giving of the in-

struction on the afternoon of the eleventh of March, on the ground in effect that it was coercive.

Of the law on this subject there is no room for doubt. The jury in this jurisdiction as in others is the sole trier of the facts when those are in dispute. Under certain circumstances not now material the presiding judge can direct the jury to bring in a verdict for one or the other of the litigants, but that is only where the state of the evidence is such that there is no dispute as to the facts and the remaining questions are deemed to be purely questions of law. But if the evidence adduced is in such a condition that honest and reasonable men, conscientiously endeavoring to arrive at the truth, may well entertain contrary opinions and come to different conclusions as to the facts, it is solely within the province of the jury to determine the issues thus presented without interference or guidance of any sort from the presiding judge as to how the issue is to be determined. It is equally clear on the other hand that the presiding judge may properly instruct the jury as to its duty in the matter of arguing with each other and of listening to each other's arguments in an effort to reach a correct conclusion on the facts. The law having provided a jury of twelve men instead of a court of one man to decide these issues of fact, it certainly contemplates and requires that when the jury retires for consideration of its verdict each juror will not only advance his reasons for the views which he tentatively holds but will also listen with respect and care to the views and arguments of the remaining jurors and with the desire to be persuaded if the arguments are persuasive.

In other words, a juror in entering the jury room should, like the judge, be in a wholly judicial frame of mind, able and willing to accord to the arguments of his fellow jurors all the weight which a reasonable, intelli-

gent, open-minded and honest man would accord to them. Once persuaded of the greater force of the arguments of one or more fellow jurors, it is the duty of the listening juror to abandon his own views and to adopt those of the others. With equal clearness, however, it is the duty of the listening juror not to abandon his views, but on the contrary to hold to them if, after very careful consideration of all that he hears in the jury room, he still feels conscientiously that his view is the correct one upon the evidence as he heard it and upon the law as it was given to him by the court. The views expressed by a majority of the jury, whether that majority be large or be small, are indeed entitled to careful consideration by the minority. In view of the fact that a majority of equally intelligent, honest and conscientious men, all striving, as the minority is, to arrive at the truth, holds and expresses views to the contrary of those held by the minority, the latter may well and should ponder and re-examine his or their own consciences and his or their own thoughts in an effort to determine whether after all the majority may be right and the minority may be wrong; but it is also true that the fact that the minority seems unable to abandon its views and persistently adheres to them, that minority likewise being composed of men chosen for jury duty because they were deemed equally intelligent, honest and conscientious, should lead the majority to re-examine its views and its thoughts in an effort to determine whether it, the majority, may be wrong in whole or in part in its tentative views. The mere fact, standing by itself, that a majority is a majority, whether large or small, should never lead a minority to abandon views honestly entertained upon the evidence and the law. The jurors are sworn and expected, each and all of them, to render a verdict which can be joined in as the verdict and the result of the thought and the beliefs of each juror.

While holding to an honest belief as to what facts have been proven in a case, no juror should ever abandon that belief simply because the majority is against him, and that even though he is the sole juror dissenting. Even courts composed of more than one judge are occasionally divided in their opinions. No one has ever suggested or could conscientiously suggest that the minority judges should yield to the majority view and join in it simply because that is the view of a majority. No comparison can properly be made between the facility with which a single judge can arrive at a conclusion and the facility with which a jury of twelve can arrive at a conclusion. As long as our law requires unanimity of verdicts there will be cases in which verdicts cannot be conscientiously reached because of the inability of all twelve men to agree upon the same findings of fact. It may be an erroneous policy to require unanimity of verdicts. It may be that, as at a time in the past in Hawaii, verdicts of nine out of twelve jurors should suffice and be legal and that such verdicts would be far more practical and yet as satisfactory to the public generally as a unanimous verdict. That, however, is a question purely for the legislature to decide. The courts must enforce the law as it is found on the books.

It is conceivable that calling the attention of a jury which is having difficulty in reaching unanimity to the expense of a trial to the litigants and the government is permissible if accompanied by suitable instructions sufficiently guarding the limits of the effect which that consideration ought to have upon the minds of the jury, that is, that it can be considered by the jury as a reason for further re-examination of their consciences and of their views of the evidence before finally reporting that agreement is impossible but that that consideration is such that it can never justify an abandonment by a minority,

whether of one man or more than one man, of views which he cannot conscientiously abandon. In all strictness, however, it would seem to be preferable not to advert to the matter of expense, since the verdict should be based purely upon the evidence actually adduced and upon the law as laid down by the presiding judge. Similarly, the desirability of a verdict in each case that comes to a jury is a fact which, with proper protecting limitations, might be mentioned to a jury without the commission of error and yet is utterly immaterial in the formation of each juror's views as to what the evidence shows and as to what the verdict ought to be in the light of the instructions on the law.

Many decisions have been rendered in other jurisdictions on this general subject. Among other helpful ones are the following: *Commonwealth* v. *Tuey,* 8 Cushing 1; *State* v. *Smith,* 49 Conn. 376; *Highland Foundry Co.* v. *Ry.,* 85 N. E. (Mass.) 437; *Simonson* v. *Lovewell,* 175 S. W. (Ark.) 407; *Peavy* v. *Clemons,* 73 S. E. (Ga.) 756; *Ry.* v. *Bishard,* 147 Fed. 496; and *Allen* v. *United States,* 164 U. S. 492.

Whether an instruction given in the hope of aiding a jury in arriving at unanimity is within or without the proper limits of such an instruction is something which must be decided in the light of the language used by the judge and the other circumstances of the particular case. In the instance under consideration we think that the tendency of the instruction given, while it was undoubtedly given without any such thought, was to lead the dissenting minority to yield to the majority simply for the sake of getting a verdict. The statement was made that our jury system "will break down as a system unless we can reach decisions"; that "if this case were a case submitted to this court without a jury and this court were called upon to decide, the court would have to decide the

case, it couldn't ignore its duty"; that "in that jury system it is not expected that those decisions are going to be perfect"; that "disputes have got to end somewhere and some jury has got to decide this case as near right as jurors can decide it"; that "when the community pays for this kind of a tribunal, when the parties are put to the expense of this kind of a trial, that it is expected from the community standpoint, from the parties' standpoint, that the best judgment of twelve men in so far as it is possible to arrive at a verdict, be used to arrive at a verdict; and the court would like to have you deliberate upon that serious situation, that in a matter of this character, which is no more complex than you and I have to decide in every day life and decisions, sometimes wrong and sometimes right, have to be reached, a decision should be reached here just as a decision would have to be reached if I had the duty to perform that you have"; that "decisions have to be made somewhere, sometime, and seriously, gentlemen, consider the jury system and the oath that was taken at the beginning of the trial by each of you to render an impartial verdict"; that "on that question of hopelessness to agree, let me again appeal to your sense of American systems, that we rule by majorities, and, again, we rule by intelligent minorities. Sometimes the reasoning of the minority, if deliberately expressed, convinces one's mind, sometimes it does not, but the majority, by reason of the fact of their being a majority, thinking along one line, has its weight; it is not a coercive weight, but it has and should have its place in deliberative bodies"; and "consider those various lines and see, gentlemen, if you can't conclude this case in some manner, so that both the court and parties and the community will know where we are at. Let's see if we can't get somewhere."

It is true that, as the record shows, the defendant at

the trial expressly admitted his liability for the full amounts claimed by the plaintiff under the first and the fourth causes of action. The second and the third causes of action, however, were submitted to the jury under instructions for decision. While neither the evidence nor the instructions given immediately upon the conclusion of the evidence have been certified to this court, the only inference is, from the very fact that the second and third causes of action were submitted to the jury and that neither side asked for a directed verdict, that the evidence was conflicting which was adduced on the issues raised under those two causes of action and was such that intelligent, conscientious jurors, animated by the sole desire to find the truth, might well base contradictory findings upon it. Under these circumstances the lengthy instruction under review did not sufficiently emphasize the duty of each juror to base his findings of fact purely upon the evidence and his duty not to yield to the views of any other juror unless conscientiously persuaded that his own tentative views were incorrect and the other jurors' views correct; and too much stress was laid upon the weight due to a majority as a mere majority. Minority jurors, particularly those in a small minority, could well have understood from the instruction as given that in order to avoid further expense to the litigants and in order to prevent the jury system breaking down and in order to avoid the very serious situation of a failure of a verdict, it was permissible that their decision should not be perfect and that it was permissible that verdicts should be "sometimes wrong and sometimes right" and that the minority member or members could properly yield to the majority even though not fully persuaded that they were wrong and the majority right.

The exception is sustained, the verdict is set aside and a new trial is granted.

*B. S. Ulrich* (*Ulrich & Hite* on the brief) for plaintiff.

*M. E. Winn* (*Thompson, Cathcart & Beebe* with him on the briefs) for defendant.

### DISSENTING OPINION OF PARSONS, J.

I cannot concur in the application to the facts in this case of the proposition of law set forth in the majority opinion and more succinctly stated in the syllabus. The instruction excepted to contains no clause directly urging upon the jury the propriety of the minority yielding under certain circumstances to the majority; and whatever implication in that regard its language may carry is counterbalanced by another implication as to the weight which should be given to the reasoning of the minority. The trial judge expressed no concern as to which side should yield. The burden of his instruction, as set forth in its climax, was an appeal to the jurors to conclude the case.

Within the limitations herein set forth it is not only within the province but it is the duty of the trial judge to seek to avoid a mistrial. The rule is thus stated in Abbott's Civil Trial Brief, 4th Ed., p. 798: "The judge must not coerce the jury into agreement upon a verdict by intimidation or threats to subject them to any unreasonable inconvenience, yet he may and ought to urge upon the jury all proper motives to induce them to agree upon a verdict, such as the propriety of a spirit of legal concession in their deliberations, and the importance to the parties and the public of a verdict and the saving of time and expense of a new trial."

In the instant case the instruction contains no threat, shows no attempted intimidation, neither withdraws nor modifies any former instruction as to the rules to be applied to the determination of the facts in the case, and directly charges against the coercive use of superior num-

bers to bring about a verdict for either party. No improper motives have been urged to induce agreement. There is nothing in the record to show that the instruction operated prejudicially to the legal rights of the defendant.

In my opinion the exception should be overruled and the judgment affirmed.