STATE OF HAWAII, Plaintiff-Appellee, *v.* ELISEO FUENTES FAJARDO, also known as Leo, Defendant-Appellant

NO. 9739

(CRIMINAL NO. 58763)

MAY 7, 1985

LUM, C.J., NAKAMURA, PADGETT, HAYASHI,
AND WAKATSUKI, JJ.

OPINION OF THE COURT BY HAYASHI, J.

Eliseo Fuentes Fajardo (hereinafter "Appellant") was convicted of manslaughter in the death of Robert John Tavares. For the reasons stated below we reverse the conviction.

I.

On April 30, 1983, Appellant and Tavares got into a verbal altercation at the Atlantis discotheque in the Pacific Beach Hotel in Waikiki. They decided to settle the matter outside and walked out to the hallway by the entrance of the discotheque. A fight ensued. Appellant pulled out a knife and stabbed Tavares to death.

Appellant was charged with the murder of Tavares in violation of Hawaii Revised Statutes § 707-701 (1976). He claimed self-defense. The first trial ended in a mistrial on December 7, 1983. A second trial followed in the same courtroom on December 12-16, 19, 21-23 and 27, 1983. The trial court gave the jury its instructions on the law on Wednesday, December 21, 1983. The jury commenced deliberations that afternoon.

The jury could not reach a verdict by 3:55 p.m. on Friday, December 23, 1983. Appellant moved for a mistrial. The trial court denied the motion and released the jury for the long Christmas weekend.

The jury resumed deliberations at 8:30 a.m. on Tuesday, December 27, 1983. At 10:23 a.m. the jury sent a communication to the court:

Your Honor:

After a period of deliberation, self examination, contemplation and meditation, we the jury have arrived at decisions which are not unanimous. Each juror became more convinced in the decision they had reached on 12/21/83.

Our deliberations serve no purpose at this time and instruction is requested.

Record at 283.

A chambers conference was called to discuss this communication. The court indicated its intention to give the jury a supplemental instruction. Appellant objected that it was "improper to add another instruction in the middle of deliberations. . . ." Transcript, December 27, 1983, at 3. He asked for a mistrial. The motion was denied.

The trial court gave the following supplemental instruction to the jury:

Ladies and gentlemen, I am going to at this time give you another instruction. I am going to ask that you continue your deliberations in an effort to agree upon a verdict, and I have additional comments I would like you to consider as you do so.

*If you cannot reach a verdict, this case must be tried again.* Any future jury must be selected in a same manner and from the same source from which you were chosen. There is no reason to believe that this case could ever be submitted to twelve men and

women more conscientious, more impartial, or more competent to decide it.

During your deliberations, you, as jurors, have a duty to consult with one another and to deliberate with the view to reaching an agreement if you can do so without violating your individual judgment. Although each juror must decide the case for himself, this should be done only after consideration of the evidence with his fellow jurors.

In the course of your deliberations, a juror should not hesitate to re-examine his own views and change his opinion if convinced it is erroneous. *Each juror who finds himself to be in the minority should reconsider his views in the light of the opinion of the jurors of the majority.* Conversely, each juror finding himself in the majority should give equal consideration to the views of the minority.

No juror should surrender his belief as to the weight or effect of the evidence for the mere purpose of returning a verdict.

Applying these additional comments together with all the instructions which I have previously given you, I will now ask that you retire once again and continue your deliberations and exercise your very best effort to reach a verdict.

Transcript, December 27, 1983, at 4-5 (emphasis added).

Court was recessed at 1:40 p.m. (Transcript, December 27, 1983, at 5), and the jury communicated to the court at 2:40 p.m. that it had reached a verdict (Record at 284).

Appellant was convicted of the lesser-included offense of manslaughter. Sentencing was set for January 30, 1984, but it was continued to February 3, 1984. The record does not contain any motion or order for this continuance, but the continuance was apparently granted to allow the State to file a motion for revocation of probation with sufficient notice to Appellant.

The motion for revocation was heard immediately prior to the sentencing for the manslaughter conviction. The trial court revoked Appellant's probation for a prior conviction (Cr. No. 54365). It resentenced Appellant to twenty years imprisonment for robbery in the first degree and five years imprisonment for carrying a firearm on the person without permit or license. These terms were to run concurrently. Then the trial court sentenced Appellant to

ten years imprisonment for the manslaughter conviction. This term was to run consecutively to the sentence for Cr. No. 54365.

## II.

Appellant filed a timely appeal of his conviction and raised three issues. He argued that the trial court erred in giving the supplemental instruction, known commonly as an *Allen* instruction, to the deadlocked jury. Then, Appellant argued that the trial court abused its discretion in continuing the sentencing to accommodate the State's motion for revocation of probation. Finally, he argued that the trial court erred in finding that Appellant had been convicted of a felony while on probation, a requirement to revoke his probation, when no sentence had been imposed in the manslaughter case.

Because we reverse the judgment of the trial court on the impropriety of the *Allen* instruction, it will not be necessary for us to reach the final two issues raised by Appellant.

### A. *The Allen Instruction*

In *Allen v. United States,* 164 U.S. 492, 17 S. Ct. 154, 41 L. Ed. 528 (1896), the United States Supreme Court affirmed the murder conviction of a teenager after reviewing eighteen assignments of error raised in the record.[1] Two of the assignments of error involved supplemental instructions given by the trial court to the jury.

After stating the standard admonition that each juror must come to his own conclusion while heeding other arguments with proper regard, the trial court gave further instructions which were summarized by the Supreme Court:

> that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many

---

[1] For a concise history of the *Allen* case as well as the genesis of what became known as the *Allen* instruction, see the California Supreme Court's discussion in *People v. Gainer,* 19 Cal. 3d 835, 566 P.2d 997, 139 Cal. Rptr. 861 (1977).

men, equally honest, equally intelligent with himself. If, upon the other hand, the majority was for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority.

*Allen,* 164 U.S. at 501, 17 S. Ct. at 157, 41 L. Ed. at 531.

The Court gave a brief analysis of the legality of the instructions and concluded that there was no error in them. This case became the foundation of all modern law on instructions to deadlocked jurors.

Since *Allen,* such instructions to deadlocked jurors became increasingly popular apparently because of "its perceived efficiency as a means of 'blasting' a verdict out of a deadlocked jury in a manner which had the imprimatur of the highest court in the land." *People v. Gainer,* 19 Cal. 3d 835, 844, 566 P.2d 997, 1001, 139 Cal. Rptr. 861, 865 (1977) (footnote omitted).

Given the basic formulation in *Allen,* most judges add their own modifications to the instruction so there is no such thing as a standard *Allen* instruction. Marcus, *The Allen Instruction in Criminal Cases: Is the Dynamite Charge About to be Permanently Defused?,* 43 Mo. L. Rev. 613, 617 (1978) (hereinafter "Marcus"). Here, the trial court gave an *Allen* admonition to the minority. In addition it stated: "If you cannot reach a verdict, this case must be tried again." Transcript, December 27, 1983, at 4.

### B. *The Law in Hawaii*

Contrary to the *Allen* case, the only appellate decision in Hawaii on an *Allen*-type instruction disapproved such an instruction. *Marks Construction Co. v. Maser,* 30 Haw. 163 (1927). *Marks* was a civil case where the court instructed a deadlocked jury that "it is the duty of the court to point out to you, gentlemen of the jury, that disputes have got to end somewhere, and some jury has got to decide this case, as near right as jurors can decide it." *Id.* at 167.

After a juror spoke up and said it seemed to be hopeless to agree, the court added:

On that question of hopelessness to agree, let me again appeal to your sense of American systems, that we rule by majorities,

and, again, we rule by intelligent minorities. Sometimes the reasoning of the minority, if deliberately expressed, convinces one's mind, sometimes it does not, *but the majority, by reason of the fact of their being a majority, thinking along one line, has its weight;* it is not a coercive weight, but it has and should have its place in deliberative bodies.

*Marks,* 30 Haw. at 168 (emphasis added).

In disapproving the instruction, this court stated:

Whether an instruction given in the hope of aiding a jury in arriving at unanimity is within or without the proper limits of such an instruction is something which must be decided in the light of the language used by the judge and the other circumstances of the particular case. In the instance under consideration we think that the tendency of the instruction given, while it was undoubtedly given without any such thought, was to lead the dissenting minority to yield to the majority simply for the sake of getting a verdict.

*Marks,* 30 Haw. at 172.

We must now decide whether the ruling we made over fifty years earlier in a civil case is applicable to a criminal case today. We look to other jurisdictions that have encountered similar problems for guidance.

### C. *The Law in Other States*

It appears "the indisputable modern trend is to abandon *Allen*" instructions. *Gainer,* 19 Cal. 3d at 847, 566 P.2d at 1003, 139 Cal. Rptr. at 867 (citation omitted); *see also,* Marcus at 617. Even confining our survey to states within the Ninth Circuit there seems to be sufficient authority to support the contention that *Allen* instructions are disfavored.

*Allen* instructions have been allowed if they were given *before* the jury began its deliberations. *Montes v. State,* 603 P.2d 1069 (Nev. 1979); *State v. Wilson,* 627 P.2d 1185 (Kan. App.), *aff'd,* 634 P.2d 1078 (Kan. 1981). But when they are given to a deadlocked jury some time after deliberations had been going on, courts have been more restrictive in approving them. *People v. Schwartz,* 678 P.2d 1000 (Colo. 1984) (narrowly prescribed circumstances); *Wilkins v.*

*State,* 609 P.2d 309 (Nev. 1980) (with admonitions); *Hancock v. State,* 664 P.2d 1039 (Okla. Cr. 1983) (if proper language used); *Brogie v. State,* 695 P.2d 538 (Okla. Cr. 1985); *State v. Marsh,* 490 P.2d 491 (Or. 1971), *cert. denied,* 406 U.S. 974 (1972) (this particular circumstance, but disapproving future use).

Some states have totally banned the use of these instructions. *State v. Thomas,* 86 Ariz. 161, 166, 342 P.2d 197, 200 (1959); *People v. Gainer,* 19 Cal. 3d 835, 566 P.2d 997, 139 Cal. Rptr. 861 (1977); *State v. Randall,* 137 Mont. 534, 353 P.2d 1054 (Mont. 1960).

*Gainer,* the California case, is particularly instructive because it discussed the two elements of the instruction that appear to be most problematical here — the admonition to minority jurors and the remark that the case must be decided or retried.

In *Gainer,* the trial court admonished the minority and said:

[I]f much the larger of your panel are for a conviction, a dissenting juror should consider whether a doubt in his or her own mind is a reasonable one, which makes no impression upon the minds of so many men or women equally honest, equally intelligent with himself or herself. . . .

*Gainer,* 19 Cal. 3d at 841, 566 P.2d at 999, 139 Cal. Rptr. at 863.

This admonition was disapproved because "the trial judge pointedly directs the jurors to include an extraneous factor in their deliberations, i.e., the position of the majority of jurors at the moment. The one or more 'holdout' jurors are told that in reaching their independent conclusions as to whether or not a reasonable doubt of the defendant's guilt exists, they are to weigh not only the arguments and evidence but also their own status as dissenters -- a consideration both rationally and legally irrelevant to the issue of guilt. They are thus deflected from their proper role as triers of fact, as effectively as if they had been instructed to consider their doubts as to guilt in light of their own prejudices or desire to go home." *Gainer,* 19 Cal. 3d at 848, 566 P.2d at 1004, 139 Cal. Rptr. at 868 (footnote omitted).

The California Supreme Court pointed out the correct law that has been well-settled in this and other jurisdictions that the jury is to decide the facts of the case based only on the evidence presented. 75 Am. Jur. 2d *Trial* § 319 (1974).

In *Gainer,* the trial court also instructed the jury that "[y]ou should consider that the case must at some time be decided."

*Gainer,* 19 Cal. 3d at 841, 566 P.2d at 1006, 139 Cal. Rptr. at 863. The California Supreme Court noted that a hung jury can and does result in the dismissal of a case. It found that the instruction misstated the law, and the trial court erred in giving the instruction. *Gainer,* 19 Cal. 3d at 852, 566 P.2d at 1006, 139 Cal. Rptr. at 870.

*Gainer* proscribed the use of *Allen* instructions as a judicially declared rule of criminal procedure. *Id.*

### D. *The Allen Instruction Here*

As noted earlier, here, the trial court first indicated that if this jury could not reach a verdict, another jury would have to decide the case. As in *Gainer* this was clearly a misstatement of the law. A mistrial could certainly result in a retrial, but it could also lead to a dismissal of the case.

A mistrial from a hung jury is a safeguard built into the American system of jurisprudence. "In our system this is a desirable result. Despite the fact that each trial which ends in a hung jury may appear to be an exercise in futility and may create understandable judicial frustration, it should be remembered that a hung jury is only undesirable where the hanging jurors simply refuse to join in conscientious collective deliberation in an honest effort to reach a verdict. There simply is no evidence that any significant number of American jurors approach their task in such a manner. What evidence there is all points the other way." Note, *Due Process, Judicial Economy and the Hung Jury: A Reexamination of the Allen Charge,* 53 Va. L. Rev. 123, 146 (1967) (footnote omitted).

Whether or not a case must be retried is not something that a jury should consider in its deliberations. It is error for a trial court to comment on the possible effects of a hung jury.

The admonition to the minority jurors is also highly problematical. "The charge usually comes at a psychological low point in the proceedings when suggestions calculated to bring agreement are apt to be met with less than ordinary critical evaluation. A minority member might well take the charge as an invitation to allow the majority to rule. At least, there is a likelihood that he will be demoralized by this 'official' language urging him to heed the majority." Comment, *Deadlocked Juries and Dynamite: A Critical Look*

*at the "Allen Charge,"* 31 U. Chi. L. Rev. 386, 388-389 (1964) (footnotes omitted).

Had the trial court simply repeated an instruction given earlier to the jury on how to go about its deliberations, we feel that no prejudicial effect would have befallen Appellant.[2] Repeating the deliberations instruction may have been a safer alternative had the trial court felt it necessary that the jury continue its deliberations.

It is clear from the record that the *Allen* instruction actually "blasted" the verdict from the jury. It had been deadlocked after deliberations covering parts of four days. Further deliberations were thought to be futile. Yet, just one hour after the *Allen* instruction was given, the jury reached a unanimous verdict.

A conscientious minority is the backbone of our American way of life. No individual, group or institution, however altruistic its intentions, can set aside the sincere convictions of a minority to conform to that of the majority for the expedience of rendering a unanimous decision. In time, the minority position may evolve into the majority as the cases on the *Allen* instruction seem to indicate.

The numerical split of the jurors on the guilt or innocence of a defendant has no bearing on the reasonableness of a juror's position whether he or she be in the majority or minority. It is error for a trial court to encourage jurors to consider such a factor in their deliberations.

The *Allen* instruction given here was prejudicial and constituted reversible error.

---

[2] For example, the trial court could have repeated Court's Instruction No. 15 which read:

A verdict must represent the considered judgment of each juror, and in order to return a verdict, it is necessary that each juror agree thereto. In other words your verdict must be unanimous.

Each of you must decide the case for yourself, but it is yourduty [sic] to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender your h onest [sic] conviction as to the weight or effect of evidence for the mere purpose of returning a verdict.

Transcript, December 21, 1983, at 12.

## III.

We recognize that some courts hold the position that "[w]hether in any case the Allen charge should be given rests initially in the sound discretion of the trial judge. But the correctness of the charge must be determined by consideration of the facts of each case and the exact words used by the trial court." *Powell v. United States,* 297 F.2d 318, 322 (5th Cir. 1962). In fact, this is the position we took in *Marks,* 30 Haw. at 172.

But today we choose to adopt the position taken by states that have abandoned the *Allen* instruction. As the Arizona Supreme Court stated, the continued use of the *Allen* instruction "will result in an endless chain of decisions, each link thereof tempered and forged with varying facts and circumstances and welded with ever-changing personalities of the appellate court. This is not in keeping with sound justice and the preservation of human liberties and security. We are convinced that the evils far outweigh the benefits, and decree that [the use of the *Allen* instruction] shall no longer be tolerated and approved by this court." *State v. Thomas,* 86 Ariz. 161, 166, 342 P.2d 197, 200 (1959).

As in California, "[w]e adopt the foregoing as a judicially declared rule of criminal procedure." *Gainer,* 19 Cal. 3d at 852, 566 P.2d at 1006, 139 Cal. Rptr. at 870.

The judgment of the trial court is reversed and remanded for proceedings not inconsistent with this opinion.

*Lynette Mah, (Richard W. Pollack,* with her on the briefs) Deputy Public Defenders, for defendant-appellant.

*Ernest J. Freitas, Jr.,* Deputy Prosecuting Attorney, for plaintiff-appellee.