**Jaime Kainoa KALUNA, Petitioner,**

v.

**George IRANON, Director, Department of Public Safety, State of Hawaii, Respondent.**

**Civil No. 95–01062 ACK.**

United States District Court, D.Hawai'i.

Dec. 27, 1996.

Reginald P. Minn, Honolulu, HI, for Petitioner.

Alfred B. Castillo, Jr., Prosecuting Attorney County of Kauai, Lihue, Kauai, HI, for Respondent.

### ORDER ADOPTING MAGISTRATE'S FINDINGS AND RECOMMENDATION TO DENY § 2254 PETITION

KAY, Chief Judge.

#### BACKGROUND

On December 22, 1995, Petitioner Jaime Kainoa Kaluna filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, seeking a writ prohibiting the State of Hawaii from further prosecuting him on charges originally brought in *State of Hawaii v. Kaluna,* Criminal No. 93–0086 (Fifth Circuit Court). Respondent filed its Memorandum in Opposition of Petition for Habeas Corpus on February 26, 1996, to which Petitioner filed his Reply on March 22, 1996.

On July 24, 1996, the Magistrate Judge thereafter issued a Findings and Recommendation ("F & R") that the Petition for Writ of Habeas Corpus be denied. Specifically, Magistrate Judge Kurren recommended that Petitioner's claim be denied because (1) retrial of Petitioner would not amount to double jeopardy and (2) the state trial judge's decision to refuse the requested *Allen* instruction was not improper. On August 5, 1996, Petitioner filed objections to the Magistrate Judge's F & R, on the grounds that the Magistrate's findings concerning the use of the *Allen* instruction in state court was erroneous, and that the authority cited to support the F & R was distinguishable.

For the following reasons, the Court ADOPTS the Magistrate Judge's F & R and accordingly DENIES the Petition for Writ of Habeas Corpus.

#### FACTS

Petitioner is presently in the custody of the State of Hawaii and has exhausted his state court remedies. On May 28, 1993, the State of Hawaii filed an amended complaint against Petitioner, charging him with second-degree murder, criminal conspiracy, possession or use of a firearm during the commission of a felony, and second-degree theft. Petitioner's trial began on October 12, 1993.

The jury deliberations at trial form the central facet of Petitioner's § 2254 claims. The jury began deliberations on Friday, October 15, 1993. The jury did not deliberate on the weekend dates of October 16 and 17, but resumed deliberations on Monday, October 18. On October 19, the jury sent the court a communication that it was deadlocked. At Petitioner's request, the trial court gave the jury a more emphatic instruction on deliberating toward an unanimous verdict. The jury resumed deliberations through October 21, 1996, at which time, by agreement of both counsel for Petitioner and the government, the trial court decided to individually poll the jurors to determine whether the jury could eventually reach a verdict. Nine jurors indicated that the jury would be unable to reach a verdict under any circumstance, while three jurors stated the jury might reach a verdict if given more time to deliberate.

At this point Petitioner requested the trial court to give an "*Allen* instruction" and allow the jury further time to deliberate. The trial court denied Petitioner's requests, however, and declared a mistrial.

Petitioner then filed a Motion to Dismiss Amended Complaint, asserting that the Double Jeopardy Clause prevented a retrial. The trial court denied Petitioner's motion. Petitioner appealed to the Hawaii Supreme Court, which affirmed the trial court's order. The Hawaii Supreme Court stated that the declaration of a mistrial was supported by manifest necessity, therefore allowing retrial of the claims against Petitioner. Petitioner then requested this Court to issue a writ of habeas corpus prohibiting the State of Hawaii from further prosecuting him on the charges in this case.

### STANDARD OF REVIEW

Any party may object to a Magistrate's case dispositive proposed order, findings, or recommendation. 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b); Local Rule 404-2. The district court must make a *de novo* determination of those portions of the Magistrate's findings to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendation made by the Magistrate. *Id.*

 *De novo* review means the court must consider the matter anew, as if it had not been heard before and as if no decision previously had been rendered. *Ness v. Comm'r*, 954 F.2d 1495, 1497 (9th Cir.1992). Thus, although the district court need not hold a *de novo* hearing, the court's obligation is to arrive at its own independent conclusion about those portions of the Magistrate's findings or recommendation to which objections are made. *United States v. Remsing*, 874 F.2d 614, 617 (9th Cir.1989).

 The Court may accept those portions of the Magistrate's findings and recommendation which are not objected to if it is satisfied that there is no clear error on the face of the record. *See Campbell v. United States District Court*, 501 F.2d 196, 206 (9th Cir.1974).

### DISCUSSION

### I. OBJECTIONS TO THE MAGISTRATE JUDGE'S F & R

In the F & R, the Magistrate Judge found that the Double Jeopardy Clause of the Fifth Amendment would not be triggered by further prosecution of the Petitioner on the charges in this case. The Magistrate Judge further found that, although the trial judge incorrectly stated that an *Allen* instruction is not appropriate under both the Hawaii Constitution and the United State Constitution, there was no actual prejudice to Petitioner. *See infra.* The Magistrate's findings indicated that there was no evidence that the *Allen* instruction was "clearly warranted" and, notwithstanding the erroneous statement that the *Allen* instruction is unconstitutional, there was no actual prejudice to Petitioner. The Magistrate further found that the trial court's decision to forego further jury deliberations and declare a mistrial was supported by "manifest necessity."

Petitioner's objections to the Magistrate's findings fall within the following categories: (1) objections to the findings on the use of the *Allen* instruction under the circumstances of this case; (2) objections to the findings regarding the individual polling of the jury; and (3) objections to the authority cited in support of the Magistrate's findings.

### II. THE ALLEN INSTRUCTION [1]

 Petitioner's habeas corpus petition alleges that the state trial court erred in denying Petitioner's request for an *Allen*-type instruction to the jury after the jury appeared deadlocked for a second time. The Court finds the state trial judge properly denied Petitioner's request for this instruction.

 First, Petitioner wanted the trial court to give a "full" *Allen* instruction. The full *Allen* instruction which Petitioner requested is attached as Exhibit A to this Order. *See attached.* Such instructions are prohibited under Hawaii law, however, since

---

1. An *"Allen* Instruction" is an emphatic instruction used to motivate jury members to review the basis of their vote and to consider whether an unanimous verdict might be reached; this type of

instruction is named after the Supreme Court ruling in *Allen v. United States,* wherein the Court reviewed such a charge. 164 U.S. 492, 501–502, 17 S.Ct. 154, 157, 41 L.Ed. 528 (1896).

the Hawaii Supreme Court bars any use of an *Allen* instruction after the jury has begun deliberations. *Hawaii v. Villeza*, 72 Haw. 327, 333–35, 817 P.2d 1054, 1058 (1991); *Hawaii v. Fajardo*, 67 Haw. 593, 600–02, 699 P.2d 20, 25 (1985). The trial court thus would have committed reversible error if it had given the *Allen* instruction which Petitioner sought. Although the Ninth Circuit does not categorically prohibit the use of an *Allen* instruction after the first indication of a jury deadlock, the Ninth Circuit disfavors such instructions. *U.S. v. Nickell*, 883 F.2d 824, 828 (9th Cir.1989). As the Ninth Circuit explains, "*Allen* instructions have been repeatedly criticized as constituting an unwarranted intrusion by the court upon the province of the jury." *Id.* Further, the Hawaii Supreme Court has similarly explained that *Allen* instructions are unduly coercive on the jury's deliberations. *Fajardo*, 699 P.2d at 25. In particular, the Hawaii Supreme Court has emphasized that the two elements of *Allen* instructions which are "most problematical" are an "admonition to minority jurors and [a] remark that the case must be decided or retried." *Id.* at p. 24.

■ Second, the trial court in this case had already once given a modified *Allen* instruction after the jury's first deadlock. At the time of Petitioner's request for an *Allen* instruction, the trial judge had given the jury a supplemental instruction on deliberating toward an unanimous verdict, in response to the first jury deadlock. In that charge the trial judge instructed the jurors to re-examine their views and to consider the views of their fellow jurors, and to ask themselves whether they should question the correctness of their own positions. This initial supplemental instruction which the trial court gave in this case was a "modified" *Allen* instruction, permissible under both Ninth Circuit and Hawaii law. For example the language of the instruction used in this case is similar to that the Ninth Circuit described as an "*Allen*-type" charge in *Nickell*. *Nickell*, 883 F.2d at 827–28. Similarly, under Hawaii case law, the Hawaii Supreme Court has approved the language which the trial court gave in this case. In *Fajardo*, while categorically rejecting *Allen* instructions, the Hawaii Supreme Court specifically stated that it

would have been proper for the trial court to have given a supplemental instruction similar to the deliberation instruction given to the jury in that case before deliberations. *Fajardo*, 699 P.2d at 25 n. 2. The Hawaii Supreme Court in *Fajardo* stated by way of example that the trial court could have given the following instruction after the jury initially indicated it was deadlocked:

> A verdict must represent the considered judgment of each juror, and in order to return a verdict, it is necessary that each juror agree thereto. In other words your verdict must be unanimous. Each of you must decide the case for yourself, but it is yourduty [sic] to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender your h onest [sic] conviction as to the weight or effect of evidence for the mere purpose of returning a verdict.

*Id.* The supplemental instruction which the trial court gave the jury is virtually identical in substance to this supplemental instruction approved in *Fajardo*. Moreover, on appeal the Hawaii Supreme Court implicitly approved the supplemental instruction given in this particular case by affirming the trial court's decision. For these reasons it was proper for the trial court to have given the initial modified *Allen* instruction to the jury in response to the first deadlock.

■ Third and relatedly, it was proper for the trial court to have refused to give a further *Allen* instruction after the jury appeared deadlocked for a second time. Having already given a modified *Allen* instruction after the jury's initial deadlock, it would have been improper for the trial judge to have heeded Petitioner's request to give a further instruction on the jury's duty to deliberate. While the Hawaii courts have not addressed this precise issue, the Court finds Ninth Circuit case law to be instructive. Under Ninth Circuit law a successive *Allen* instruction, such as after a second deadlock,

is improper. *See U.S. v. Nickell,* 883 F.2d at 828 (holding that giving two Allen-type instructions to the jury during deliberations constitutes reversible error); *U.S. v. Armstrong,* 654 F.2d 1328, 1334 (9th Cir.1981) (noting that the Ninth Circuit has established a *per se* rule against repeating an *Allen* charge); *U.S. v. Seawell,* 550 F.2d 1159, 1163 (9th Cir.1977). As the Ninth Circuit explains, this rule avoids "the overwhelmingly coercive effect of the district court's giving a second *Allen* charge after the jury has deadlocked a second time." *Nickell,* 883 F.2d at 828. In particular,

> [r]epetition of the charge, together with rejection of the jury's second report of deadlock, is almost certain to convey the thought that by failing to come to an agreement—by once again reporting themselves at impasse—the jurors have acted contrary to the earlier instruction as that instruction was properly to be understood . . . Given a second time, not at the request of the jury but at the instance of the judge, the charge no longer serves as an instruction; no matter how it may be softened it becomes a lecture sounding in reproof.

*Id.* at 828–29 (quoting *Seawell,* 550 F.2d at 1163). Thus in the Ninth Circuit, while an initial *Allen* or "modified" *Allen* instruction is permissible in certain circumstances, upon successive deadlocks the trial court may not give a supplemental deliberations instruction for a second time. *Id.* Repeating the initial instruction which was given after the first deadlock, or a variation of an *Allen* instruction, is reversible error. In the case at bar, Petitioner requested the *Allen* instruction after the jury had indicated for the second time that it was deadlocked. The court had already given the jury a modified *Allen* instruction in response to the first deadlock, and thus it would have been reversible error to have given the successive instruction which the Petitioner had requested. "Manifest necessity" mandated declaration of a mistrial. *See infra.*

Last, although the trial judge was in error in stating that the *Allen* instruction was not permitted under the U.S. Constitution (at least under any circumstance), the error did not result in "actual prejudice" to the Petitioner. *See Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 1721–22, 123 L.Ed.2d 353 (1993) (holding that a petitioner is not entitled to habeas relief based on trial error unless he establishes actual prejudice). Giving an *Allen*-type instruction on the jury's duty to deliberate after the second deadlock would have been improper under both Hawaii and federal law. *See supra.*

For the above reasons, the Court adopts this portion of the F & R which rejects Petitioner's claim that the trial court erred in denying his request for an *Allen* instruction.

## III. *DOUBLE JEOPARDY*

The Double Jeopardy Clause of the Fifth Amendment protects the criminal defendant from "embarrassment, expense and ordeal," and minimizes "the possibility that even though [a defendant is] innocent, he may be found guilty" if the government is given more than one opportunity to convict him. *Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223–24, 2 L.Ed.2d 199 (1957). A defendant who objects to the declaration of a mistrial may not be retried unless the prosecutor demonstrates manifest necessity. *Arizona v. Washington,* 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978).

In the case at bar, the Magistrate found that the trial court's decision to forego further jury deliberations and declare a mistrial was supported by "manifest necessity." The Supreme Court has held that "manifest necessity" justifies the discharge of juries unable to reach verdicts, and that the Double Jeopardy Clause thus does not bar retrial in such cases. *Logan v. United States,* 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429 (1892) (cited in *United States v. See,* 505 F.2d 845 (9th Cir.) *cert. denied,* 420 U.S. 992, 95 S.Ct. 1428, 43 L.Ed.2d 673 (1975)). As the Ninth Circuit has held, "the paradigm example of 'manifest necessity' sufficient to permit a second trial of a defendant in a criminal case occurs when the jury cannot reach a verdict." *Arnold v. McCarthy,* 566 F.2d 1377, 1386 (9th Cir. 1978). In the case at bar, the jury was unable to reach a verdict and hence the Double Jeopardy Clause is not violated by a

retrial. For this reason the Court adopts this portion of the Magistrate's F & R.

## IV. *LENGTH OF DELIBERATIONS AND POLLING OF THE JURY*

■ Petitioner next contends that the Magistrate's F & R is inconsistent regarding the importance of the length of jury deliberations in determining manifest necessity and the trial court's declaration of a mistrial. The Magistrate correctly noted that there is no set standard to determine manifest necessity; "courts steadfastly continue to refuse to categorize fact patterns that constitute manifest necessity and fact patterns that do not." *United States v. Bates*, 917 F.2d 388, 394 (9th Cir.1990) (citing *United States v. Jorn*, 400 U.S. 470, 480, 91 S.Ct. 547, 554–55, 27 L.Ed.2d 543 (1971)). Although the time which the jury spends in deliberations is a significant factor in determining whether a declaration of mistrial is appropriate, it is not determinative.

■ Petitioner contends that the length of jury deliberations in his case indicated that a declaration of mistrial by the trial judge was inappropriate. In this case, the jury deliberated for a period of close to five days, after a trial which lasted less than four days. After two days, the trial court gave the jury an additional instruction on its duty to deliberate toward an unanimous verdict. On the fifth day the trial court polled the jury, with the agreement of counsel for Petitioner and the government, and determined that the jury would not arrive at an unanimous verdict. That decision was based on individual polling of the jurors, in which nine jurors indicated they believed the jury would be unable to reach a verdict and three jurors stated the jury might reach a verdict if given more time to deliberate.

The length of deliberations must be considered in conjunction with several other factors, however, including the crucial factor that the jury has stated that it is deadlocked. *See*, 505 F.2d at 851. In the case at bar nine jurors indicated that the jury was deadlocked and would not be able to render a verdict under any circumstances. Further, the length of the deliberations in this case was not unusually or abnormally short for the length of the trial or complexity of the case. As noted in *See*, an American Bar Association study indicated that in trials which last 3–5 days, juries which were hung spent an average of 10.8 hours in deliberations. *See*, 505 F.2d at 852. The jury in the Petitioner's case deliberated close to five days for a trial which lasted less than four days—significantly longer than the length of deliberations of the average hung jury. While this is not a determinative factor by itself, it is significant when taken in conjunction with other factors to be considered. *See*, 505 F.2d at 852.

■ The Petitioner further contends that the trial judge erroneously failed to poll the jury as a whole on the issue of whether they were deadlocked. However, there is no requirement that the jury be polled as a whole. The trial court individually polled each juror to determine whether the jury could eventually reach a verdict. The jury may be polled individually (which is preferable in many states) or, in the alternative, as a whole. *Arnold v. McCarthy*, 566 F.2d 1377, 1387 (9th Cir.1978); *See*, 505 F.2d at 851. In the Petitioner's case, as stated above, nine jurors indicated that the jury as a whole would be unable to reach a verdict under any circumstance, while three jurors stated that the jury might reach a verdict if given more time. The jury need not be unanimous in finding itself deadlocked to justify a declaration of mistrial, however. All that is required is some jurors must indicate they are unwilling to change their minds. *United States v. Klein*, 582 F.2d 186, 193 (2nd Cir. 1978) (holding that a declaration of mistrial was warranted when nine of the twelve jurors indicated there was no possibility of reaching a verdict).

■ Petitioner also objects to the authority cited by the Magistrate in his F & R, contending that the cases are distinguishable from his own.[2] However, the grounds upon

---

2. The cases objected to by Petitioner are: *United States v. See*, 505 F.2d 845 (9th Cir.), *cert. denied*, 420 U.S. 992, 95 S.Ct. 1428, 43 L.Ed.2d 673 (1974); *Arnold v. McCarthy*, 566 F.2d 1377 (9th Cir.1978); and *United States v. Klein*, 582 F.2d

which Petitioner would distinguish these cases are not dispositive. Petitioner first contends his own case was more complex than that considered by the juries in *United States v. See* and in *Arnold v. McCarthy.* However, the complexity of the case in proportion to the length of deliberation is not determinative, but rather is just one of several factors to be considered. *See,* 505 F.2d at 851. This single factor does not make the substantive law applied in *See* and *Arnold* distinguishable from the Petitioner's case.

Petitioner further contends that the juries in *See* and *Arnold* were polled as a whole on the deadlock issue, whereas the jury in his case was polled individually. As noted above, however, the jury need not be polled as a whole. In fact, in many jurisdictions polling jurors individually is the preferred method. *See,* 505 F.2d at 851. Since both methods are accepted as alternatives, this distinction is not dispositive.

█ Petitioner also distinguishes *Arnold* because the defendant in that case failed to object to the declaration of a mistrial and did not request an *Allen* instruction, and he distinguishes *Klein* because the trial court declared a mistrial only after it gave an *Allen* instruction. However, the declaration of mistrial and the application of the *Allen* instruction are discretionary on the part of the trial judge. As noted above, the trial judge in Petitioner's case acted properly in refusing the requested *Allen* instruction and in declaring a mistrial.

The factors pointed out by Petitioner in the authority to which he objects do not alter the application of the substantive law and its relevance to this case. The issues he objects to are largely within the discretion of the trial judge to consider as factors in the evaluation of whether a declaration of mistrial is appropriate. The Court has examined the trial court's use of that discretionary power in light of the applicable case law. The variance of certain factors in each case does not vitiate the authority outlined and applied.

### CONCLUSION

For the foregoing reasons, the Court ADOPTS the Magistrate's Findings and Recommendation to DENY Petitioner's § 2254 Petition for Writ of Habeas Corpus.

IT IS SO ORDERED.

### EXHIBIT "A"

*Eleventh Circuit*

The Eleventh Circuit held that the district court's refusal to give supplemental instructions was not an abuse of discretion absent some error or impropriety in the original instruction. *United States v. Walther,* 867 F.2d 1384, 1341 (11th Cir.), rehearing denied, 876 F.2d 901 (1989). The Eleventh Circuit noted that, "The extent and character of supplemental instructions are within the sound discretion of the trial court. *United States v. Purr,* 716 F.2d 796, 808 (11th Cir. 1983).".

### § 20.08 Supplemental Instructions— When Jurors Fail to Agree Seasonably

The Court wishes to suggest a few thoughts to you which you may desire to consider in your deliberations. You should consider these thoughts along with the evidence received during the trial and all the instructions previously given to you.

This is an important case. The trial has been expensive in terms of time, effort, and money to both the defense and the prosecution. If you should fail to agree on a verdict, the case is left open and undecided. Like all cases, it must be disposed of at some time. There appears no reason to believe that a second trial would not be costly to both sides. Nor does there appear any reason to believe that the case can be tried again, by either side, better or more exhaustively than it has been tried before you.

Any future jury would be selected in the same manner and from the same source as you were chosen. So, there appears no reason to believe that the case could ever be submitted to twelve people more conscientious, more impartial, or more competent to

186 (2d Cir.1978), *cert. denied,* 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979).

decide it or that more or clearer evidence could be produced on behalf of either side.

These concepts are, of course, clear to all of us who have participated in this trial. The only reason that I mention these facts now is because some of them may have escaped your attention while you have been fully occupied in reviewing the evidence in the case in the light of the instructions with your fellow jurors. These are all matters which, along with other and perhaps more obvious ones, remind us how desirable it is that you unanimously agree upon a verdict.

As stated in the instructions given at the time the case was first submitted to you for decision, you should not surrender your honest beliefs as to the weight or effect of evidence solely because of the opinion of other jurors or for the mere purpose of returning a unanimous verdict.

It is your duty as jurors, however, to consult with one another and to deliberate with a view to reaching an agreement if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but you should do so only after a consideration of the evidence in the case with your fellow jurors. In the course of your deliberations you should not hesitate to reexamine your own views and change your opinion if convinced it is erroneous.

In order to bring twelve minds to a unanimous result you must examine the questions submitted to you with candor, and frankness and with proper deference to and regard for the opinions of each other. That is to say, in conferring together, each of you should pay due attention and respect to the views of the others and listen to each other's arguments with a disposition to reexamine your own views.

If much the greater number of you are for a conviction, each dissenting juror ought to consider whether a doubt in his or her own mind is a reasonable one since it makes no effective impression upon the minds of so many equally honest, equally conscientious fellow jurors who bear the same responsibility, serve under the same oath, and have heard the same evidence with, we may assume, the same attention and an equal desire to arrive at the truth.

If on the other hand, a majority or even a lesser number of you are for acquittal, other jurors ought to seriously ask themselves again, and most thoughtfully, whether they do not have reason to doubt the correctness of a judgment which is not concurred in by many of their fellow jurors and whether they should not distrust the weight and sufficiency of evidence which fails to convince the minds of several of their fellow jurors beyond a reasonable doubt.

You are not partisans. You are judges—judges of the facts. Your sole interest here is to determine whether the government has proven each essential element of [each] charge concerning [the] [each] defendant beyond a reasonable doubt. You are the exclusive judges of the credibility of all the witnesses and of the weight and effect of all the evidence.

Remember, at all times, that no juror is expected to yield a conscientious belief he or she may have as to the weight or effect of evidence. But remember also that after full deliberation and consideration of all the evidence in the case, it is your duty to agree upon a verdict if you can do so without violating your individual judgment and your conscience. Remember too, if the evidence in the case fails to establish guilt beyond a reasonable doubt, [the] [each] defendant should have your unanimous verdict of "not guilty."

In order to make a decision more practicable, the law imposes the burden of proof on one party or the other in all cases. In the present case, the burden of proof is on the government.

Above all, keep constantly in mind that, unless your final conscientious appraisal of the evidence in the case clearly requires it, the defendant should never be exposed to the risk of having to twice run the gauntlet of a criminal prosecution and to endure a second time the mental, emotional, and financial strain of a criminal trial.

You may conduct your deliberations as you choose, but I suggest that you now carefully reexamine and reconsider all the evidence in the case bearing upon the questions before you in the light of the Court's instructions on the law.

You may be as leisurely in your deliberations as the occasion may require and you may take all the time which you may feel is necessary. [The bailiffs have been instructed to take you to your meals at your pleasure and to take you to your hotel whenever you may be ready to go.]

You may now retire and continue your deliberations in such manner as shall be determined by your good and conscientious judgment as reasonable men and women.

## NOTES

*In General*

The above charge, designed to spur a deadlocked jury into reaching a unanimous verdict, is popularly known as a "dynamite charge" or an "*Allen* charge."·

In *Allen v. United States*, 164 U.S. 492, 501, 17 S.Ct. 154, 157, 41 L.Ed. 528 (1896), the trial judge had advised a deadlocked jury that,

"... in a large proportion of cases absolute certainty could not be expected; that although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet they should examine the question submitted with candor and with a proper regard and deference to the opinions of each other; that it was their duty to decide the case if they could conscientiously do so; that they should listen, with a disposition to be convinced, to each other's arguments; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, upon the other hand, the majority was for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority."

*Allen,* 164 U.S. at 501, 17 S.Ct. at 157. The Supreme Court affirmed the conviction and wrote,

"While, undoubtedly, the verdict of the jury should represent the opinion of each individual juror, it by no means follows that opinions may not be changed by conference in the jury-room. The very object of the jury system is to secure unanimity by a comparison of views, and by arguments among the jurors themselves. It certainly cannot be the law that each juror should not listen with deference to the arguments and with a distrust of his own judgment, if he finds a large majority of the jury taking a different view of the case from what he does himself. It cannot be that each juror should go to the jury-room with a blind determination that the verdict shall represent his opinion of the case at that moment; or, that he should close his ears to the arguments of men who are to rectify the jury confusion."

*Martinez–Nava,* 888 F.2d 414.