STATE OF HAWAII, Plaintiff-Appellant, *v.* JOHN I. KAAHANUI, Defendant-Appellee

NO. 11866

(CR. NO. 86-0242)

DECEMBER 30, 1987

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, AND WAKATSUKI, JJ.

OPINION OF THE COURT BY NAKAMURA, J.

The Circuit Court of the First Circuit, concluding "that any waiver of Defendant's constitutional right to have counsel present during [custodial] interrogation was not done intelligently, knowingly and with an understanding of his right . . . . ," ruled the statements obtained from John I. Kaahanui could not be used as evidence at his trial. The State of Hawaii appeals; it avers the circuit court erred in finding the defendant "was confused regarding his right to counsel [during interrogation] and his right to counsel at trial" and in finding he "did not understand his right to have counsel present" during interrogation. Reviewing the record of proceedings in the circuit court, we conclude the defendant's statements should not have been suppressed.

I.

John I. Kaahanui was arrested at 10:20 p.m. on February 10, 1986 on suspicion of having been involved in a criminal episode some twenty minutes earlier at a bus stop on Kamehameha Highway in Honolulu. Upon his arrest, Kaahanui was taken to Queen's Hospital for treatment of an injury sustained in the episode. He was "booked" thereafter at the Honolulu Police Station. The sus-

pect, however, was not questioned immediately. He was readmitted to the hospital at 1:20 a.m. upon the request of Detective George Chock, the arresting officer. Chock "wanted [Kaahanui] to be taken back to Queen's to have a psychiatrist check him out" and "make sure he was fit [to be questioned]." The psychiatrist informed the detective by telephone that "John was mentally fit." When Kaahanui was brought back to the police station, he was given a test to determine the alcoholic content of his blood. Although he had been drinking before the arrest, no alcohol was detected in his blood at 3:30 a.m. on February 11, 1986.

At 11:00 a.m. Kaahanui was taken from his cell to an interrogation room by Chock. The detective was aware of the suspect's history of mental illness, his prior commitments to the State Hospital, his admission to the hospital on a voluntary basis shortly before the criminal episode under investigation, and his departure therefrom without authorization a few hours prior to his involvement in the suspected crime. Preliminary questions unrelated to the events of the night before also brought forth answers from the suspect that he was thirty-five years old, was a graduate of the Job Corps, and was then unemployed. Kaahanui told Chock he drank a substantial quantity of beer and smoked two "joints" of marijuana after he left the hospital; he also told the detective that he received medication to alleviate a schizophrenic condition before leaving the hospital and slept only a few hours the night before. When asked how he felt, Kaahanui replied he was tired but felt "okay."

At this point, Chock decided to confer with his superior. In the detective's words: "I went to talk to my captain, and I told him that the defendant said he was tired. So I felt that maybe I shouldn't go on with the interview because of this . . . ." But the captain directed that the interview should continue if the accused "was capable of answering." The detective returned to the interrogation room and again asked the suspect how he felt at the moment. From the response and an observation of the suspect's physical state, Chock was convinced of Kaahanui's lucidity and fitness to be questioned. The detective thus proceeded with the interrogation[1] after informing

---

[1] Since the crime being investigated was Kidnapping, a Class A felony, the detective discussed the recording of the interrogation with his captain, who directed that it be recorded on videotape. The trial court thus had the benefit of a visual and audial record of the interrogation.

Kaahanui of his "Miranda" rights and having him execute a Honolulu Police Department Form 81 (HPD-81), on which the suspect indicated he did "[not] want an attorney now."[2] The interrogation brought forth, *inter alia,* an admission by the suspect that he punched the female victim.

A criminal complaint charging Kaahanui with Kidnapping and Assault in the Third Degree was filed thereafter. The defendant moved to suppress all statements obtained in the course of the custodial interrogation conducted by Chock. The trial court heard the testimony of the detective, studied the audio-visual recording of the interrogation, and entered an order granting the Motion to Suppress Statements. "Based upon the evidence received and arguments of counsel presented, the [c]ourt ma[d]e the following findings of facts and conclusions of law:

1. The Defendant was lucid and able to engage in conversation intelligently and could articulate his thoughts and feelings with H.P.D. Detective George Chock when his statement was obtained by the police . . . ;

2. The statement of Defendant was voluntarily given and uncoerced by police;

3. However, when Defendant was advised of his constitutional rights by Detective Chock, Defendant was confused regarding his right to counsel for purposes of questioning under the guarantees of the Fifth Amendment and his right to counsel at trial under the Sixth Amendment;

4. Although Detective Chock followed proper procedures utilizing H.P.D. Form 81 and did everything that a police officer should do to try to insure that Miranda warnings are given by police, Defendant did not understand his right to have counsel present during the questioning as evidenced by the . . . taped interview;[3]

---

[2] HPD-81 is a standard form on which the accused person's "Miranda" rights are delineated. The accused may waive his right to have counsel present during interrogation by marking a negative response to the question "[d]o you want an attorney now?"

[3] What has been omitted from the trial court's order at this point is a verbatim restatement of relevant portions of the colloquy between the detective and the defendant, which are set out in the discussion of the application of the law to the historical facts, *infra.*

5. Therefore, the Court finds that any waiver of Defendant's constitutional right to have counsel present during the interrogation was not done intelligently, knowingly and with an understanding of his right under the standards of *State v. Maluia,* 56 Haw. 428 (1975)."[4]

The State's appeal followed. We begin our analysis of the issues posed on appeal by reviewing the "Miranda" rule adopted by this court.

## II.

When we first examined "the scope of the protections guaranteed by [the] Hawaii Constitution's privilege against self-incrimination" in *State v. Santiago,* 53 Haw. 254, 265, 492 P.2d 657, 664 (1971), we concluded "the protections which the United States Supreme Court enumerated in *Miranda[v. Arizona,* 384 U.S. 436, 468 (1966),] have an independent source in the Hawaii Constitution's privilege against self-incrimination." *State v. Santiago,* 53 Haw. at 266, 492 P.2d at 664. In order to ensure that the exercise of the constitutional privilege would be scrupulously honored, we adopted measures similar to those delineated in *Miranda v. Arizona, supra.* With respect to the issue in *Santiago* on the admissibility of statements obtained from the accused in the course of custodial interrogation, we said

that before reference is made at trial to statements made by the accused during custodial interrogation, the prosecutor must first demonstrate that certain safeguards were taken before the accused was questioned. Unless other equally effective protections are developed, the prosecutor must show that each accused was warned that he had a right to remain silent, that

---

[4] The circuit court issued the Order Granting Motion to Suppress Statements, from which the State appealed, on November 14, 1986. After the timely appeal was noted, however, the court issued an Amended Order Granting Motion to Suppress Statements. When a case "is appealed to the supreme court, the circuit court loses jurisdiction except as to issuance of certain orders in aid of, and that do not interfere with, the jurisdiction of the supreme court." *Dawson v. Lanham,* 53 Haw. 76, 80, 488 P.2d 329, 332 (1971) (citations omitted). Thus, the Amended Order Granting Motion to Suppress Statements, which was issued on February 25, 1987, was a nullity. *See* 9 *Moore's Federal Practice* ¶ 203.11 at 3-47 (citations omitted).

anything said could be used against him, that he had a right to the presence of an attorney, and that if he could not afford an attorney one would be appointed for him.

*Id.* at 266, 492 P.2d at 664; *see also State v. Kalai,* 56 Haw. 366, 368, 537 P.2d 8, 11 (1975). And our mandate was: "[U]nless these protective measures are taken, statements made by the accused may not be used either as direct evidence in the prosecutor's case in chief or to impeach the defendant's credibility during rebuttal or cross-examination." *Id.*

When custodial interrogation occurs without the presence of counsel and a statement is obtained from the accused, the federal rule imposes "a heavy burden . . . on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Miranda v. Arizona,* 384 U.S. at 475 (citation omitted). The standards of proof on waiver are those enunciated in *Johnson v. Zerbst,* 304 U.S. 458 (1938). *Miranda v. Arizona,* 384 U.S. at 475.

We follow the same high standards in enforcing the "Miranda" rights that "have an independent source in the Hawaii Constitution's privilege against self-incrimination." *State v. Santiago,* 53 Haw. at 266, 492 P.2d at 664. After a defendant has been adequately apprised of his "Miranda" rights, he "may waive [effectuation of] these rights provided the waiver is made voluntarily, knowingly and intelligently." *State v. Amorin,* 61 Haw. 356, 358, 604 P.2d 45, 47 (1979) (citing *Miranda,* 384 U.S. at 444); *cf. State v. Dicks,* 57 Haw. 46, 48, 549 P.2d 727, 729 (1976) ("The right to counsel is waivable when it is voluntarily and intelligently undertaken. *Johnson v. Zerbst,* 304 U.S. 458 (1938)."). With these guideposts in mind, we turn to the task at hand of determining whether the trial court erred or not in suppressing the defendant's statements.

## III.

The trial court saw no reason to fault Detective Chock's decision to proceed with the interrogation of John I. Kaahanui on February 11, 1986. It found he was then "lucid and able to engage in conversation intelligently and . . . articulate his thoughts and feelings" and that his statements were "voluntarily given and uncoerced."

Moreover, it found the detective "followed proper procedures utilizing H.P.D. Form 81 and did everything that a police officer should do to try to insure that Miranda warnings are given by police." Yet, it concluded "that any waiver of Defendant's constitutional right to have counsel present during the interrogation was not done intelligently, knowingly and with an understanding of his right under the standards of *State v. Maluia*, 56 Haw. 428 (1975)." The court's application of constitutional principles to the historical facts recounted in the order of suppression cannot be upheld.

The trial court premised its conclusion that the defendant's waiver of counsel "was not done intelligently, knowingly and with an understanding of his right" on "the following portions of the taped interview:[5]

Q: Detective George Chock
A: Defendant
Q: You don't have to tell me anything. If you want an attorney, someone to talk to, help you, you can have one. If you cannot afford one, the court will appoint one for you. You understand that?
A: If I get an attorney, then I have to wait longer yeah?
Q: What do you mean longer?
A: For the case to be solved.
Q: Not really.
A: But if I say I don't need an attorney and I complete the whole thing now, that would mean that it would be all over in a few hours yeah?
Q: If you want an attorney now, okay, I'm going to stop interviewing you until we get you an attorney.
A: That means I have to wait in the, in the cell ah?
Q: You're still going to have to wait there anyway.
A: Yeah.
Q: You can have an attorney — you don't have to have an attorney now but you can request for one later when you go to court.
A: When I go to court?

---

[5] What follows is taken verbatim from the Order Granting Motion to Suppress Statements issued by the court on November 13, 1986.

Q: When you go to court, but you want one now when I talk to you?

A: No, I, I just going to tell you what happened that night.

Q: Okay but you don't want an attorney now while I talk to you?

A: You think it's, it's fair? You think it's the right way to have an attorney?

Q: Well it's up to you see. If you feel you need an attorney then we'll go . . .

A: That means I have to stay in the cell longer yeah?

Q: You're still going to have to stay in the cell till I complete my investigation.

A: Uh huh.

Q: Okay. So what, do you want an attorney now or you want one for later on trial?

A: If we complete the investigation now, that means you're going let me go?

Q: It depends on how the outcome of the investigation goes.

A: If she press charges, if she files charges against me then I have to go according to the charges?

Q. Right.

A: I have no say about anything, whatever.

Q: Oh, you do, that's why we have this interview. To see um what happened that night, your side of the story.

A: This is offense yeah?

Q: Yeah, Kidnapping is the offense.

A: Uh huh, so I'm the defense.

Q: No, no, no, no. While you're the person being charged, you're the defendant right now, okay?

A: Oh, defendant.

Q: So if you understand all of this, what about now, do you want an attorney right now?

A: That means I have to wait in the cell yeah?

Q: Well like I told you, you have to wait in the cell till the outcome of the . . .

A: . . . whole trial.

Q: No, no, not the whole trial. The outcome of my investigation right now. See, I have to see if I have enough evidence here to charge you with the offense of Kidnapping.

A: You don't have the evidence.

Q: Well, that's what I'm gonna find out right now, that's why I have to talk to you.

A: Okay, you can to [sic] talk to me.

Q: Okay, so do you want an attorney now?

A: No.

Q: Okay, put your initials.

A: Over here yeah?

Q: Uh huh, well, whatever answer you gave.

A: I can still get one later in court yeah.

Q: You can get one later in court, right if you have to go to court. If you decide to answer my questions without a lawyer being present, you still have the right to stop answering at any time. [D]o you understand what I've told you?

A: Yeah."

After studying the foregoing colloquy between Chock and Kaahanui, the trial court found the defendant "was confused regarding his right to counsel for purposes of questioning . . . and his right to counsel at trial" and "did not understand his right to have counsel present during the questioning." We have perused the same conversation and are "left with the definite and firm conviction" that the court erred in rendering those findings. *Kim v. State*, 62 Haw. 483, 493, 616 P.2d 1376, 1382 (1980) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). For there is nothing in it or in the remainder of the record from which inferences of confusion or misapprehension regarding the right to counsel during interrogation and at trial may reasonably be drawn.

There is no evidence "that the accused was threatened, tricked, or cajoled into a waiver[.]" *Miranda v. Arizona*, 384 U.S. at 476. Rather, the trial court found "[t]he statement of Defendant was voluntarily given and uncoerced by police." And it further found "Detective Chock followed proper procedures utilizing H.P.D. Form 81 and did everything that a police officer should do to try to insure that Miranda warnings are given by police." Were we to hold no valid waiver was demonstrated here, we would be reading our rule regarding the waiver of "Miranda" rights so only one calibrated to a defendant's best interests could be upheld. But like the Supreme Court's rule, ours is designed to assure the "essentially voluntary and knowing nature" of a waiver, not its ultimate wis-

dom. *Colorado v. Spring,* 479 U.S. ____, ____, 107 S. Ct. 851, 859, 93 L. Ed. 2d 954, 967 (1987).

Since John I. Kaahanui's waiver of counsel was essentially voluntary and knowing, we reverse the trial court's ruling and remand the case for further proceedings not inconsistent with this opinion.

*Arthur E. Ross* (Law Clerk *Alexandria Chinn* with him on opening brief), Deputy Prosecuting Attorney, for appellant.

*Susan Barr (William M. Domingo* with her on the brief), Deputy Public Defenders, for appellee.