**STATE OF HAWAII**, Plaintiff–Appellee, v. **EDWARD SHAWN VILLEZA**, Defendant–Appellant

NO. 14613

(CR. NO. 89–0050)

AUGUST 23, 1991

LUM, C.J., PADGETT, HAYASHI, WAKATSUKI, AND MOON, JJ.

## OPINION OF THE COURT BY MOON, J.

Defendant Edward Shawn Villeza (Villeza) appeals from the judgment and sentence entered by the Circuit Court of the First Circuit following his conviction for murder in the second degree, a violation of Hawaii Revised Statutes § 707–701.5, and sentencing under § 706–656. Villeza argues that the trial court erred in admitting the statement he made to police on the ground the statement was coerced. Villeza also contends that the trial court erred by instructing the jury that it must unanimously agree that it was deadlocked before so advising the court.

We affirm the trial court's admission of Villeza's statement because the totality of circumstances surrounding Villeza's statement indicate that it was freely and voluntarily given. We agree, however, that the trial court erred in its instruction to the jury on the ground that the instruction was prejudicial to Villeza's right to a trial by a fair and impartial jury. Accordingly, we vacate Villeza's conviction and remand for a new trial.

## I. FACTS

On January 5, 1989, Villeza shot his mother, Charlotte Villeza. He was arrested shortly after midnight on January 6, 1989. On January 7, 1989, Villeza gave a statement to homicide detectives Anderson Hee and Vernon Santos in which he admitted shooting his mother. Villeza was subsequently indicted for murder in the second degree.

On September 28, 1989, Villeza filed a motion to suppress his January 7, 1989 statement to police on the ground that the statement was coerced. The trial court found that Villeza's statement was not coerced and his motion to suppress was denied.

The trial record reflects that on January 5, 1989, Villeza had been drinking beer at Hau Bush Beach near his mother's home. He

had his rifle with him and fired it between ten and twenty times while on the beach. Later, he walked to his mother's house, intending to pick up some things he had left there. Finding no one home, he waited in front of the house until Charlotte Villeza arrived home, and they both entered the house. According to Villeza, they sat in the dining room and talked while he brushed sand off his rifle with his hand. His finger accidentally touched the trigger and the rifle went off, striking his mother in the right temple. Villeza dragged her body into the yard and covered it with vines. Upon returning to the house, Villeza hid the rifle in the attic and did not know whether he should call the police.

At approximately 10:20 p.m., Villeza's brother, Ian, arrived home. Unable to ascertain his mother's whereabouts, Ian called the police. When the police arrived, Villeza was arrested for trespass. However, Villeza attempted to run away after police found Charlotte Villeza's body. Villeza was immediately apprehended and placed under arrest.

Jury trial commenced on April 25, 1990. It was undisputed that Villeza shot his mother; the issue at trial was whether the shooting was accidental. Villeza did not testify at trial, but his January 7, 1989 statement to the police, consisting of ninety–three pages, was admitted into evidence.

The jury began its deliberations on Thursday, May 3, 1990. During the course of its six days of deliberations, the jury sent five jury communications to the trial court. On Monday, May 7, 1990 at 3:45 p.m., the court received Communication Number 4, which stated, "[w]e cannot reach a unanimous verdict." The trial court considered this communication the next morning, at which time Villeza moved for a mistrial. Villeza's motion was denied. The court, in answer to Communication Number 4, submitted to the jury the following supplemental instruction:

> Please review the attached instructions together with the instructions which have already been submitted to you

[and continue your deliberations]. If at any time the jurors are unanimously of the opinion that further deliberation would not result in the unanimous verdict, you may so advise the Court.

At defense counsel's request, the trial court struck the words "continue your deliberations." Defense counsel had no further comments concerning the court's supplemental instruction.

On Wednesday, May 9, 1990, the jury returned a unanimous verdict of guilty of murder in the second degree.

## II. DISCUSSION
### A. Villeza's January 7, 1989 Statement

Villeza contends that the trial court erred in admitting the January 7, 1989 statement he made to police because it was the product of coercion. In the past, we have held that where evidence is conflicting concerning the admissibility of an inculpatory statement, "the reviewing court may not disturb the finding of admissibility unless the defendant demonstrates that there has been a clear abuse of discretion[.]" *State v. Green*, 51 Haw. 260, 264, 457 P.2d 505, 508 (1969). More recently, however, we have applied the clearly erroneous standard to the findings on which the decision to admit the statement are based. *See State v. Kaahanui*, 69 Haw. 473, 481, 747 P.2d 1276, 1281 (1987); *State v. Mailo*, 69 Haw. 51, 53, 731 P.2d 1264, 1266 (1987); *Lono v. State*, 63 Haw. 470, 629 P.2d 630 (1981).

In *State v. Nelson*, 69 Haw. 461, 469, 748 P.2d 365, 370 (1987) (citations omitted), we noted that

[w]hether the defendant invoked his right to counsel and whether he waived the right are primarily questions of fact. Thus, we would not disturb the trial court's determination of these questions "unless, after a review of the

whole record, we are 'left with the definite and firm con-
viction that a mistake has been committed.' "

We further explained that "in a more technical sense, waiver is a
question that requires 'application of constitutional principles to
the facts as found.' " *Id.* at 471 n.9, 748 P.2d at 371 n.9 (citations
omitted).

Therefore, in this case, our review of whether Villeza's state-
ment was in fact coerced requires determination of whether the
findings of the trial court are clearly erroneous. Moreover, we are
required to examine the entire record and make an independent
determination of the ultimate issue of voluntariness. *See State v.
Kaahanui*, 69 Haw. 473, 747 P.2d 1276 (1987); *Davis v. North
Carolina*, 384 U.S. 737, 741 (1966). After careful review of the
record and the totality of circumstances surrounding his statement
presented at the hearing on the motion to suppress, we agree with
the trial court that Villeza freely and voluntarily made his state-
ment.

At the suppression hearing, the evidence regarding the cir-
cumstances surrounding the obtaining of Villeza's statement con-
sisted of Honolulu Police Department (HPD) form 81, Villeza's
transcribed recorded statement, and the testimony of the detective
in charge of the investigation, Anderson Hee. Villeza did not tes-
tify. The evidence revealed that when Villeza was arrested at
approximately 12:30 a.m. on January 6, 1989, all of his clothing,
except for his undershorts, was recovered as evidence and he was
given a blanket. He was held in a windowless, air conditioned cell
approximately eight to ten feet square. He remained in the above
described state of dress for over twenty–four hours until detectives
began taking his statement on January 7, 1989, at 9:03 a.m.

At the time of arrest and again before giving his statement,
Villeza was informed of his rights to remain silent and to have an
attorney present during questioning in accordance with *Miranda v.
Arizona*, 384 U.S. 436 (1966). He also signed the HPD form 81

indicating that he understood and voluntarily waived those rights. During the interview, he stated that he was twenty–five years old, had a twelfth–grade education, and could read and write English. He answered no when asked if he was feeling intoxicated or tired. Throughout the interview, he wore the blanket around his waist. He did not complain of being cold or mistreated, but appeared calm and relaxed, showing no signs of duress. The interrogation lasted for one hour and forty–six minutes. At the conclusion of the interview, he stated that he had not been coerced or threatened into making his statement and that it was completely voluntary. Villeza, from our review of the transcribed recorded statement, showed no indication that he was reluctant to give a statement. Moreover, in relaying his version of the shooting, Villeza remained consistent, throughout the interview, that the shooting was accidental.

On appeal, Villeza asserts that, as a matter of law, a statement extracted from a suspect who has been denied clothing is a coerced statement because denial of clothing, like denial of food and shelter, violates a fundamental human right and can serve no purpose other than to humiliate the prisoner and take advantage of his or her vulnerability. We agree that denial of clothing to a prisoner under certain circumstances may be humiliating and could be used as a psychological ploy to coerce a statement from a prisoner. We therefore do not hesitate to condemn such police practice. In this case, however, review of the whole record reveals no evidence that Villeza was coerced into making his statement. As noted above, the totality of circumstances surrounding Villeza's statement indicate that it was freely and voluntarily given.

Villeza relies on *Malinski v. New York*, 324 U.S. 401 (1944), to support his contention that his statement was a product of coercion. The defendant in *Malinski* was arrested and taken to a hotel where he was stripped and examined for bullet wounds; he was completely naked for three hours and then provided socks,

underwear and a blanket until his confession some ten hours later. The United States Supreme Court held that Malinski's confession was not voluntary. In addition to the facts noted above, Malinski was not allowed to see a lawyer despite his request to do so and the only person he was permitted to see was a convict friend in a meeting arranged by the police. The Court found that any doubts of whether Malinski's confession was voluntary were resolved by the prosecutor's own statements that it was proper police procedure to humiliate a prisoner and let him think he would be beaten. *Malinski*, 324 U.S. 406–07. The outrageous factors that led the Supreme Court in *Malinski* to conclude that the confession was coerced are not present in this case.

Therefore, based on the above, we find no error in the findings of the trial court.

## B. Trial Court's Supplemental Instruction

Villeza argues that the trial court erred when it instructed the jury that it must unanimously agree that further deliberation would not result in a unanimous verdict before so advising the court. On appeal, our standard of review for jury instructions is whether the instructions, when considered as a whole, are prejudicially insufficient, erroneous, inconsistent, or misleading. *State v. Napeahi*, 57 Haw. 365, 377, 556 P.2d 569, 576 (1976); *State v. Halemanu*, 3 Haw. App. 300, 306, 650 P.2d 587, 592 (1982). Although the claimed error was not specifically objected to at trial, we recognize that it affected Villeza's substantial rights and is, therefore, plain error. *See* Hawaii Rules of Penal Procedure 52(b).

The role of a jury is to reach a verdict based on its independent judgment of the evidence presented in a case. Where a jury, in deliberation, reports that it is deadlocked or unable to reach a verdict, the trial court is obligated to exercise its broad discretion to obtain a verdict from the jury. *State v. Moriwake*, 65 Haw. 47, 647

P.2d 705 (1982). However, in so doing, the court must not direct the jury to matters outside the evidence presented, which may cause undue pressure on the jury to reach a verdict based on compromise and expediency. *See State v. Fajardo*, 67 Haw. 593, 699 P.2d 20 (1985); *People v. Gainer*, 139 Cal. Rptr. 861, 566 P.2d 997 (1977).

In *Allen v. United States*, 164 U.S. 492 (1896), the United States Supreme Court held that an instruction to a deadlocked jury that directs minority jurors to reconsider their views in light of the views of the majority was permissible. Subsequently known as the *Allen* instruction, the instruction became increasingly popular because of "its perceived efficiency as a means of 'blasting' a verdict out of a deadlocked jury[.]" *Fajardo*, 67 Haw. at 597, 699 P.2d at 22 (quoting *People v. Gainer*, 19 Cal. 3d 835, 844, 139 Cal. Rptr. 861, 865, 566 P.2d 997, 1001 (1977)). However, this court specifically rejected the use of the *Allen* instruction in *State v. Fajardo*, 67 Haw. 593, 699 P.2d 20 (1985).

In *Fajardo*, appellant was tried for murder. Following three days of jury deliberations, the jury reported that it could not reach a verdict. At a conference called to discuss the communication, the court stated its intent to give the jury a supplemental instruction. Appellant objected and asked for a mistrial. The motion was denied.

The trial court gave a supplemental instruction to the jury asking that it "continue . . . deliberations in an effort to agree on a verdict." Additionally, the court advised that if a verdict could not be reached, "*this case must be tried again.*" Although the court reminded the jurors to consult and deliberate with a view to reaching an agreement "without violating your individual judgment," the court also stated that "*[e]ach juror who finds himself to be in the minority should reconsider his views in the light of the opinion of the jurors of the majority,*" and that the jurors in the majority should do likewise. The court then instructed the jury to retire

to the jury room and "exercise your very best effort to reach a verdict." *Id.* at 594–95, 699 P.2d at 21–22 (emphasis in original).

On appeal, appellant *Fajardo* argued that the trial court erred in giving the *Allen* instruction to the deadlocked jury. We agreed because in our view the instruction was flawed for two reasons. First, whether or not a case must be retried is not a factor that a jury should consider in its deliberations. *Id.* at 600, 699 P.2d at 24.

Second, it was error for the trial court in *Fajardo* to admonish the minority jurors to reconsider their views in light of the opinion of the majority jurors. By instructing them in this way, the dissenting jurors were required to consider not only the evidence presented, but also their position in the minority. We held that this was error. As we stated, "[a] conscientious minority is the backbone of our American way of life. No individual, group or institution, however altruistic its intentions, can set aside the sincere convictions of a minority to conform to that of the majority for the expedience of rendering a unanimous decision." *Id.* at 601, 699 P.2d at 25. Therefore, we have explicitly rejected the *Allen* instruction and have held that it was error to instruct minority jurors to reconsider their views in light of the majority in their deliberations. *State v. Fajardo*, 67 Haw. 593, 699 P.2d 20 (1985).

In the present case, we find that it was error for the trial court to instruct the jury that it must unanimously decide that it was unable to reach a verdict. Such an instruction has no basis in the law and, like the *Allen* instruction, serves only to create a coercive environment incapable of supporting a meaningful verdict based solely upon the jury's consideration of the evidence.

In this case, when the jury advised the court that it was unable to reach a verdict, the trial court properly exercised its discretion in determining that the jury might not be "deadlocked" and by providing the jury with a complete set of the jury instructions. However, the court's supplemental instruction that the jury must unanimously agree that it could not reach a verdict clearly compelled the

jury to consider a factor outside the evidence presented at trial. The erroneous instruction had the potential of impressing upon the jury that it could be deliberating indefinitely unless it unanimously reached a verdict or agreed it was deadlocked. The jury's concern over such a matter could clearly have infected and undermined its deliberations.

The potential effect on the jury's deliberations caused by the erroneous instruction evokes a number of scenarios which reasonably could have occurred. For example, regardless of whether the jury was voting on the ultimate issue of guilt or on the issue of deadlock, the instruction indirectly could have caused each juror to first assess whether he or she was in the majority or minority, and then to re-examine his or her views from that perspective. If jurors found themselves to be in the minority, the erroneous instruction had the potential of placing undue pressure on them to conform to the views of the majority to perhaps dispel the image of being viewed as obstructionists or simply because of a desire to go home. Moreover, because of the requirement of unanimity mandated in the erroneous instruction, one faction of jurors, intent on reaching a verdict, could decide to hold the other faction "hostage," knowing that unless they were unanimously agreed on the issue of deadlock, they must continue deliberating.

We therefore conclude that court's supplemental instruction no. 4 was clearly prejudicial.

The State contends that court's instruction no. 14 cured any prejudice caused by the instruction at issue in this case. Court's instruction no. 14 stated:

> A verdict must represent the considered judgment of each juror, and in order to return a verdict, it is necessary that each juror agree thereto. In other words your verdict must be unanimous. Each of you must decide the case for yourself, but it is your duty to consult with one another,

and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment.

In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence for the mere purpose of returning a verdict.

The State highlights the phrase in the first paragraph of instruction no. 14, which states "if you can do so without violence to individual judgment," as a caveat in following the court's response to jury communication no. 4. However, "[a]n erroneous instruction, clearly prejudicial cannot be cured by another instruction which correctly states the law, but does not call the attention of the jury to the erroneous instruction." *State v. Napeahi*, 57 Haw. 365, 377, 556 P.2d 569, 577 (1976) (citation omitted). The phrase, "if you can do so without violence to individual judgment" related to "returning a verdict" and has nothing to do with the issue of being deadlocked. Instruction no. 14 simply defined how the jury should reach a verdict.

Therefore, based on the above, we conclude that the giving of court's supplemental instruction no. 4 was plain error, which was clearly prejudicial to Villeza's right to a trial by a fair and impartial jury.

## III. CONCLUSION

Based on the foregoing, we affirm the trial court's admission of Villeza's January 7, 1989 statement to the police and reverse the conviction and remand this case for a new trial.

*Caroline M. Mee*, Deputy Prosecuting Attorney, for Plaintiff–Appellee.

*Judd Scott (William E. McGrath* and *Theodore Y.H. Chinn*, on the briefs), Deputy Public Defenders, for Defendant–Appellant.