994 P.2d 607

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Raymond T.H. TANAKA and Jacqueline L. Tanaka, Defendant–Appellants.**

**No. 21812.**

Intermediate Court of Appeals of Hawai'i.

Nov. 15, 1999.

As Amended Nov. 30, 1999.

Reconsideration Denied Dec. 6, 1999.

Certiorari Dismissed March 3, 2000.

# 676

Glenn D. Choy, on the briefs, Honolulu, for defendant-appellant Raymond T.H. Tanaka.

Dwight C.H. Lum, on the briefs, Honolulu, for defendant-appellant Jacqueline L. Tanaka.

Caroline M. Mee, on the briefs, Honolulu, for plaintiff-appellee.

WATANABE, ACOBA, and LIM, JJ.

Opinion of the Court by LIM, J.

Defendant–Appellant Raymond T.H. Tanaka appeals the judgment of the Circuit Court of the First Circuit convicting him of one count of promoting a dangerous drug in the third degree, one count of unlawful use of drug paraphernalia and two counts of promoting a detrimental drug in the third degree; and sentencing him to concurrent indeterminate terms of imprisonment of five years with a mandatory minimum term of thirty days, five years, thirty days and thirty days, respectively.

Defendant–Appellant Jacqueline L. Tanaka appeals the judgment of the Circuit Court of the First Circuit convicting her of one count of promoting a dangerous drug in the third degree, one count of unlawful use of drug paraphernalia and one count of promoting a detrimental drug in the third degree; and sentencing her to concurrent indeterminate terms of imprisonment of five years

with a mandatory minimum term of thirty days, five years and thirty days, respectively.

We vacate both judgments and remand for a new trial.

## I. The Incriminating Items.

On October 18, 1996, the Honolulu Police Department executed a search warrant at the Waimanalo residence of Defendants–Appellants Raymond and Jacqueline Tanaka. The warrant authorized a search of the premises and the person and personal effects of Mr. Tanaka for narcotics and associated items.

Evidence at trial indicated that numerous items were found and recovered during the search, in various places in the two-bedroom, one-bathroom, single-family residence.

These included a substantial number of items which could be considered drug paraphernalia, including cigarette rolling papers, several glass pipes, a variety of small containers, a selection of weighing scales, and an assortment of butane lighters and propane torch lighters.

Two ziploc packets recovered from a silver canister contained a substance identified after analysis as methamphetamine. Two of the glass pipes contained residue found to be methamphetamine.

Residue in a metal pipe was analyzed and found to be marijuana. Two ziploc bags found in a Nuprin bottle each contained a partial cigarette. Analysis revealed that both "roaches" contained marijuana. Vegetable matter in a ziploc bag turned out to be marijuana. Another ziploc bag recovered from Mr. Tanaka's pocket also contained vegetable matter later identified as marijuana.

## II. The Charges.

As a result of the extensive inventory of inebriants and paraphernalia found during the search, the Tanakas were indicted by the grand jury on May 27, 1997.

Count I of the indictment charged each Tanaka with promoting a dangerous drug in the third degree [1] for knowingly possessing the dangerous drug methamphetamine.

1. Hawai‘i Revised Statutes (HRS) § 712–1243.

Count II charged each Tanaka with the use of or possession with intent to use drug paraphernalia.[2]

Count III charged each Tanaka with promoting a detrimental drug in the third degree[3] for knowingly possessing the detrimental drug marijuana.

Count IV charged only Mr. Tanaka with promoting a detrimental drug in the third degree for knowingly possessing marijuana.

On March 29, 1998, a jury found Mr. and Mrs. Tanaka guilty of all charges against them. On August 13, 1998, the Tanakas appealed their respective convictions and sentences.

### III. The *Arceo* Problem.

■ The plethora of incriminating items found and recovered during the search, when compared with the charges in the indictment, posed the possibility that each defendant in each count of the indictment, with the colorable exception of Count IV, could be convicted of the offense charged on the basis of his or her possession of each one of several different incriminating items.

This circumstance presented the further possibility that a jury could purport to find a defendant guilty without unanimity as to the underlying incriminating item.

Under Count III, for example, six jurors could find that Mr. Tanaka knowingly possessed the metal pipe with the marijuana residue, while the remaining six jurors could find that Mr. Tanaka knowingly possessed the Nuprin bottle containing the partial marijuana cigarettes. Since all twelve jurors would thus find that Mr. Tanaka knowingly possessed marijuana, a detrimental drug, a unanimous verdict of guilty conceivably could

be returned without jury unanimity as to the specific item possessed.

This is the scenario interdicted by the Hawai'i Supreme Court in *State v. Arceo.*[4]

In *Arceo,* the trial revealed evidence of multiple acts of both sexual penetration and sexual contact within the context of only two counts, one charging a single act of sexual penetration and the other charging a single act of sexual contact.[5] The supreme court acknowledged the possibility there of verdicts not grounded in jury unanimity as to the specific act committed, and held that such verdicts, without jury unanimity as to each material element of the offense,[6] would violate the defendant's right to a fair trial under article I, section 14 of the Hawai'i Constitution and his right to due process under article I, section 5 of the Hawai'i Constitution.[7] Its prophylactic holding required that, under such circumstances implicating the right to a unanimous jury verdict, (1) the prosecution must elect the specific act upon which it will rely to establish the conduct element of the offense, or (2) the trial court must give the jury a specific unanimity instruction.

In this case, the trial court recognized the problem and gave a specific unanimity instruction for each defendant under each count of the indictment, seven in all. They are attached as appendices one through seven to this opinion.

### IV. The Trial Court Improperly Commented Upon the Evidence.

■ Though the trial court's recognition of the problem was laudable, its solution may have been less so.

2. HRS § 329–43.5(a).

3. HRS § 712–1249.

4. *State v. Arceo,* 84 Hawai'i 1, 928 P.2d 843 (1996).

5. *Id.* at 5, 928 P.2d at 847.

6. "The elements of an offense are such (1) conduct, (2) attendant circumstances, and (3) results of conduct, as: (a) Are specified by the definition

of the offense, and (b) Negative a defense ...." HRS § 702–205; "[N]o person may be convicted of an offense unless the following are proved beyond a reasonable doubt: (a) Each element of the offense ...." HRS § 701–114; *State v. Nobriga,* 10 Haw.App. 353, 358, 873 P.2d 110, 113 (1994) (the State's burden is to prove each element of the charged offense beyond a reasonable doubt).

7. *Arceo,* 84 Hawai'i at 30–33, 928 P.2d at 872–75.

First, each unanimity instruction specified where each potentially incriminating item was found in the house.

For example, in appendix one, relating to Mr. Tanaka and Count I, item # 1 was described as "[m]ethamphetamine found in the glass pipe *from jacket pocket, Bedroom # 1 closet*" (emphasis added).

It was important, under *Arceo*, to ensure jury unanimity as to the underlying item or items for each guilty verdict. Given the number of similar items found and recovered from various places in the premises, it must have been difficult to avoid reference to location when describing each item.

But it is impossible to ignore the fact that the trial court's references to location were in every instance categorical and unqualified. This being so, we fear the trial court transgressed the prohibition against commenting upon the evidence.

Hawai'i Rules of Evidence Rule 1102 provides that "[t]he court shall instruct the jury regarding the law applicable to the facts of the case, but shall not comment upon the evidence."

The court's references to location in its unanimity instructions were "conclusive in nature and connote[d] a predetermination" as to the place each item was found, qualities of jury instructions we found, in *State v. Nomura*, to be improper commentary by the trial court. We did so because such commentary places the court in the role of advocate, derogating its proper attitude of fairness and impartiality.[8]

In *Nomura*, the offending commentary was the trial court's reference to the complaining witness as the "victim" in a jury instruction. It should be noted that we found that error to be harmless, because when the court's instructions were read as a whole, any prejudicial effect of the reference to "victim" was nullified by other general instructions given by the court.[9]

We cannot say the same result should obtain in this case. The improper commentary in *Nomura* involved a matter more semantic than substantive. In this case, however, the location of the incriminating items, when found during the search, was the central issue in the case.

The trial court instructed the jury on actual, constructive, sole and joint possession:[10]

> The law recognizes two kinds of possession: actual possession and constructive possession. A person who knowingly has direct physical control over a thing, at a given time, is then in actual possession of it.

> A person who, although not in actual possession, knowingly has both the power and the intention, at a given time, to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it.

> The law recognizes also that possession may be sole or joint. If one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons share actual or constructive possession of a thing, possession is joint.

> The element of possession has been proved if you find beyond a reasonable doubt that the defendant has actual or constructive possession, either solely or jointly with others.

> Mere proximity to the object, mere presence, or mere association with the person who does control the object is insufficient to support a finding of possession.

With the exception of the marijuana found in the pocket of Mr. Tanaka (Count IV), none of the incriminating items were found in the actual possession of either Tanaka. Thus the crucial determination in the case was constructive possession, either sole or joint.

---

**8.** *State v. Nomura*, 79 Hawai'i 413, 416–18, 903 P.2d 718, 721–23 (App.1995).

**9.** *Id.; State v. Villeza*, 72 Haw. 327, 333, 817 P.2d 1054, 1057 (1991) ("On appeal, our standard of review for jury instructions is whether the instructions, when considered as a whole, are prejudicially insufficient, erroneous, inconsistent, or misleading.").

**10.** The trial court gave this instruction with the agreement of the Tanakas, and they do not cite it as error on appeal.

Given the circumstances of the case, this determination depended a great deal on the location of each item when found. The glass pipe found in the pocket of a jacket belonging to one defendant, for example, or the glass pipe found in a purse in the couple's bedroom, speak volumes, by their very location, about the issue of constructive possession.

All parties recognized the pivotal importance of location in this case. The deputy prosecuting attorney focused his closing and rebuttal arguments on the issue. More important for our purposes, the case for both Tanakas was nothing but an attack on the State's contentions about where each incriminating item was found during the search.

In their respective cases, the Tanakas stressed the lack of testimony from the police officers who first located the incriminating items, arguing that the police witnesses who did testify could not do so on personal knowledge of the discoveries. The Tanakas also emphasized that some items in the house were moved before being photographed, purportedly in place, by the police.

To compound the uncertainty, the Tanakas presented evidence that a certain "Peaches" resided for a time in a shed to the rear of the house. Incriminating items were found in that shed. The Tanakas focused on the items removed from the shed, and on inconsistencies in police testimony regarding the conduct and results of their search of the shed, and thereupon conjured the spectre of planted evidence.

The Tanakas sought to exploit all of this uncertainty with testimony from friends and a relative of Mrs. Tanaka. Each testified that the Tanaka residence was something of an open house cum community recreation center, where friends and neighborhood people would drop in for socializing, games and crafts. Her friends also testified that visitors often borrowed various items from her house. Significantly, when they did so they would leave their own counterparts behind.

Curiously, these friends displayed a penchant for containers, such as purses and handbags. Thus, the Tanakas insinuated that at any one time their household contained various repositories that did not belong to them.

The issues raised by the Tanakas clearly illustrate the linchpin of the defense: Where did the police find each incriminating item? It made a world of difference in considering the issue of constructive possession whether an incriminating item was found in the rear shed where "Peaches" stayed, or in the living room where the neighborhood congregated, or in the Tanaka's bedroom, or in the rear shed—but later planted in the bedroom, as the Tanakas would have it.

The trial court, with its paramount moral and intellectual authority, may well have overborne the better judgment of the jury by its commentary on the evidence, as the court instructed the jury, "you must follow these instructions even though you may have opinions to the contrary." This being the case, we discern a distinct and reasonable possibility that the court's error in commenting upon the location of the items contributed to the convictions of the Tanakas.

The Tanakas objected at trial to the court's unanimity instructions, and properly presented the point on appeal.

Because the error materially impinged upon the Tanakas' constitutional right to trial by jury,[11] a substantial right,[12] and because we conclude that the error was not harmless beyond a reasonable doubt, we are obliged to vacate and remand for a new trial.[13]

## V. The Trial Court Improperly Truncated The Presumption of Innocence.

Even if, on the other hand, the error was harmless beyond a reasonable doubt, our inquiry into the trial court's unanimity instructions would not end.

---

11. *Arceo*, 84 Hawai'i at 29, 928 P.2d at 871.

12. Hawai'i Rules of Penal Procedure Rule 52(a) ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.").

13. *State v. Holbron*, 80 Hawai'i 27, 32, 904 P.2d 912, 917 (1995).

The introduction to each instruction is also problematic, for it instructed the jury that it was not to consider the unanimity question until *after* it had found the defendant guilty. For example, from appendix one:

> If and only if you have found Defendant Raymond T.H. Tanaka guilty as to Count I, Promoting a Dangerous Drug in the Third Degree, you must answer the following question yes or no:

> Did you unanimously find beyond a reasonable doubt that Defendant Raymond Tanaka knowingly was in actual or constructive possession of any one of the following:

> . . . .

> You must be unanimous in finding beyond a reasonable doubt that at least one of the above-listed objects contained an amount of methamphetamine, and that Defendant Raymond Tanaka knowingly was in actual or constructive possession of it at the time of the offense, in order to find Defendant Raymond Tanaka guilty as to this offense.

(Checklist of items omitted; emphasis added).

This instruction certainly puts the cart before the horse, for the teaching of *Arceo* is that the jury must achieve unanimity as to each material element of a criminal offense *before* it can find a defendant guilty. The unanimity requirement is an essential part and parcel of the jury's formulation of its guilty verdict, not an afterthought.[14]

We heed our duty on appeal regarding jury instructions, however, and peruse the trial court's instructions as a whole.[15]

In doing so, we do note the second paragraph of each unanimity instruction, the operative paragraph which asks the jury, "*Did you* unanimously find ... ?" (Emphasis added). A colorable argument· could be made that this cured any premature and unconstitutional guilty verdict by requiring the jury to do a sort of autopsy of its deliberations to ensure that concord had indeed been reached therein.

The argument becomes quite cogent when we consider the last paragraph of each unanimity instruction, which reiterates that the jury must be unanimous and convinced beyond a reasonable doubt as to each and every material element of the offense in order to find the defendant guilty. If the second paragraph was not sufficient to cure any possible prejudice, the argument goes, then the last paragraph surely was.

We question, however, the complete efficacy of such postmortem nostrums.

First, we question whether it is appropriate or even possible for a jury to deliberate anew after reaching a guilty verdict. The United States Court of Appeals for the Ninth Circuit rejected this proposition in *United States v. Pino–Noriega*,[16] in which the defendant invoked his right to testify after the jury had reached a verdict but before the verdict had been received by the court:

> Once a verdict has been announced, 'reopening the evidence' is not a simple matter of letting the defendant testify and then sending the jury back to reconsider its verdict and deliberate some more. It is not possible for a jury, once it has reached a verdict, to revert to a state of open-mindedness and impartiality if called back to hear the defendant's testimony and deliberate anew.... As Judge Keep correctly noted below, once a jury has reached a verdict, the jurors have 'discussed the ultimate issue of guilt or innocence, and they have made their decision about the strength, accuracy, reliability of all the testimony that they've heard.... They ha[ve] already looked at all the evidence. They ha[ve] collectively discussed it. And they ha[ve] decided [whether or not] he was guilty by proof beyond a reasonable doubt .... that's too big a bell to unring.'[17]

Second, in reading the trial court's instructions as a true and complete whole, we note the very first substantive instruction it gave the jury, which read:

---

**14.** *Arceo*, 84 Hawai'i at 30, 928 P.2d at 872.

**15.** *Nomura*, 79 Hawai'i at 417, 903 P.2d at 722.

**16.** *United States v. Pino–Noriega*, 189 F.3d 1089 (9th Cir.1999).

**17.** *Id*. at 1095.

You must presume the Defendants are innocent of the charge against them. *This presumption remains with the Defendants throughout the trial of the case, unless and until the prosecution proves the Defendants guilty beyond a reasonable doubt.*

The presumption of innocence is not a mere slogan but an essential part of the law that is binding upon you. It places upon the prosecution the duty of proving every material element of the offense charged against the Defendants beyond a reasonable doubt.

(Emphasis added). By its very terms, this instruction removed the protective cloak of innocence from the Tanakas once the jury found them guilty. We presume the jury heeded this instruction.[18]

This instruction and the unanimity instructions, read in conjunction with each other, failed to maintain the Tanakas' presumption of innocence during the jury's consideration of the unanimity requirement. Each of the trial court's unanimity instructions warned the jury that such consideration was to take place "if and only if" it first found a defendant guilty and thus no longer presumed to be innocent.

Reading the instructions as a whole, we can find no cure for this error.

It does not help that the second paragraph of each unanimity instruction required the jurors to reexamine their deliberations, for it required review only with respect to unanimity.

Nor does it help that the final paragraph of each unanimity instruction reminded the jurors they could not convict unless convinced beyond a reasonable doubt. The reasonable doubt standard is no substitute for the presumption of innocence, and instruction on the standard cannot cure omission of instruction on the presumption.[19]

■ The right to a fair trial is a fundamental liberty guaranteed by the fourteenth amendment to the United States Constitution. The presumption of innocence, though nowhere articulated in the United States Constitution, is a basic component of a fair trial under our system of criminal justice, and its enforcement lies at the foundation of our administration of the criminal law.[20]

Nevertheless, its derogation is not structural error requiring reversal without consideration of its effect upon the trial.[21]

The United States Supreme Court has held that failure to give a requested instruction on the presumption of innocence "must be evaluated in light of the totality of the circumstances—including all the instructions to the jury, the arguments of counsel, whether the weight of the evidence was overwhelming, and other relevant factors—to determine whether the defendant received a constitutionally fair trial." [22]

We have accepted this mode of analysis,[23] and we apply it to this case.

As previously noted, the trial court's first substantive instruction to the jury explained and mandated the presumption of innocence. This circumstance certainly militates against a finding of harmful error. Yet the error we are concerned with here arose because the very terms of this initial instruction extinguished the presumption upon a jury finding of guilt, rendering rudderless in this respect the jury's subsequent unanimity deliberations.

The jury's unanimity deliberations concerned possession of the incriminating items. We have discussed the crucial role this issue

---

18. *Cf. State v. Amorin*, 58 Haw. 623, 629, 574 P.2d 895, 899 (1978) (presuming that trial court's curative instruction was adhered to by the jury).

19. *Coffin v. U.S.*, 156 U.S. 432, 452–61, 15 S.Ct. 394, 39 L.Ed. 481 (1895); *Taylor v. Kentucky*, 436 U.S. 478, 484–86, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978).

20. *Estelle v. Williams*, 425 U.S. 501, 503, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976).

21. *See State v. Suka*, 79 Hawai'i 293, 298, 901 P.2d 1272, 1277 (App.1995) (some errors involving constitutional rights, called "structural errors," can never be treated as harmless error); *but see Holbron*, 80 Hawai'i at 32 n. 12, 904 P.2d at 917 n. 12.

22. *Kentucky v. Whorton*, 441 U.S. 786, 789, 99 S.Ct. 2088, 60 L.Ed.2d 640 (1979).

23. *State v. Iosefa*, 77 Hawai'i 177, 182, 880 P.2d 1224, 1229 (App.1994).

played on both sides of the case. Thus the absence of the presumption infected the pivotal determination in the case.

We note as well the closing argument of the deputy prosecuting attorney, which proceeded count by count of the indictment, with argument on the evidence interwoven with the elements of the offenses charged.[24] This approach alloyed the evidence with the power of naked allegation, making it doubly important that the presumption of innocence be preserved inviolate and undiminished throughout the jury's deliberations.

Not to belabor the point, but we note again the defense put up by the Tanakas. It was based not only upon their own witnesses, but upon admissions by the State's witnesses and inconsistencies among their testimonies. It was complete, comprehensive and logically coherent. If the jury had the prerogative to find it credible and all of its insinuations reasonable inferences,[25] then we must conclude, the considerable strength of the State's evidence notwithstanding, that the evidence was in rough counterpoise which the absence of a presumption of innocence would necessarily tip.

In general, it is difficult to overestimate the negative impact the absence of a presumption of innocence can have on the fairness of a trial. It is truly an elusive assessment when a concept as pervasive and amorphous as the presumption of innocence is involved. It is not a specific fact or set of facts amenable to weighing and evaluation within the context of the body of evidence at trial. It not only means what it says, but means, in addition, that the jury is not to consider "official suspicion, indictment, continued custody or other circumstances not adduced as proof at trial," but only the evidence and nothing but the evidence.[26] It is at once a cognitive principle and an attitude, variously described as a "caution" or a "hint" from the trial court, or a purgative of improper influences,[27] that resists singular

identification in the first instance and precise analysis in the second.

Given the totality of the circumstances, we cannot conclude that the truncated presumption of innocence in this case adequately preserved the Tanakas' right to a constitutionally fair trial.

The Tanakas objected to the court's unanimity instructions on the basis of their potential for jury confusion as to the elements of the offenses and the burden of proof. In their reply brief, the Tanakas argued the precise issue framed here.

Finding that this error as well was not harmless beyond a reasonable doubt, we must, on this independent basis, vacate the judgment and remand for a new trial.

## VI. Disposition.

In light of our disposition of this case, we find it unnecessary to address the Tanakas' remaining points of error.

Vacated and remanded for a new trial.

## APPENDIX ONE

If and only if you have found Defendant Raymond T.H. Tanaka guilty as to Count I, Promoting a Dangerous Drug in the Third Degree, you must answer the following question yes or no:

Did you unanimously find beyond a reasonable doubt that Defendant Raymond Tanaka knowingly was in actual or constructive possession of any one of the following:

1) State's Exhibit 3I—Methamphetamine found in the glass pipe from jacket pocket, Bedroom # 1 closet?

Yes _____ No _____

2) State's Exhibit 3P—Methamphetamine found in glass pipe from silver eyeglass container, from purse in closet, Bedroom # 1?

Yes _____ No _____

3) State's Exhibit 5B—Methamphetamine found in small ziplock bag, with

24. *Cf. Taylor*, 436 U.S. at 486–87, 98 S.Ct. 1930.

25. *State v. Stocker*, 90 Hawai'i 85, 90, 976 P.2d 399, 404 (1999) (credibility of witnesses and weight of evidence are the province of the jury).

26. *Taylor*, 436 U.S. at 485, 98 S.Ct. 1930.

27. *Id.*

green dollar signs, found in silver "People" container in closet, Bedroom # 1?

Yes _____     No _____

4) State's Exhibit 5B—Methamphetamine found in small ziplock bag, clear (not with green dollar signs), in silver "People" container in closet, Bedroom # 1?

Yes _____     No _____

You must be unanimous in finding beyond a reasonable doubt that at least one of the above-listed objects contained an amount of methamphetamine, and that Defendant Raymond Tanaka knowingly was in actual or constructive possession of it at the time of the offense, in order to find Defendant Raymond Tanaka guilty as to this offense.

### APPENDIX TWO

If and only if you have found Defendant Jacqueline L. Tanaka guilty as to Count I, Promoting a Dangerous Drug in the Third Degree, you must answer the following question yes or no:

Did you unanimously find beyond a reasonable doubt that Defendant Jacqueline Tanaka knowingly was in actual or constructive possession of any one of the following:

1) State's Exhibit 3I—Methamphetamine found in the glass pipe from jacket pocket, Bedroom # 1 closet?

Yes _____     No _____

2) State's Exhibit 3P—Methamphetamine found in glass pipe from silver eyeglass container, from purse in closet, Bedroom # 1?

Yes _____     No _____

3) State's Exhibit 5B—Methamphetamine found in small ziplock bag, with green dollar signs, found in silver "People" container in closet, Bedroom # 1?

Yes _____     No _____

4) State's Exhibit 5B—Methamphetamine found in small ziplock bag, clear (not with green dollar signs), in silver "People" container in closet, Bedroom # 1?

Yes _____     No _____

You must be unanimous in finding beyond a reasonable doubt that at least one of the above-listed objects contained an amount of methamphetamine, and that Defendant Jacqueline Tanaka knowingly was in actual or constructive possession of it at the time of the offense, in order to find Defendant Jacqueline Tanaka guilty as to this offense.

### APPENDIX THREE

If and only if you find the Defendant Raymond T.H. Tanaka guilty as to Count II, Unlawful Use of Drug Paraphernalia, you must answer the following question yes or no:

Did you unanimously find beyond a reasonable doubt that as to Raymond Tanaka any one of the following objects was drug paraphernalia:

1) State's Exhibit 3B—Coleman propane canister with torch attachments from kitchen?

Yes _____     No _____

2) State's Exhibit 3C—large grey hascher scale from kitchen?

Yes _____     No _____

3) State's Exhibit 3E—Silver "People" container from Bedroom # 1 closet?

Yes _____     No _____

4) State's Exhibit 3I—Glass pipe from jacket, Bedroom # 1 closet?

Yes _____     No _____

5) State's Exhibit 3J—Purple scale from pink & green container, Bedroom # 1?

Yes _____     No _____

6) State's Exhibit 3J—Grey scale from pink & green container, Bedroom # 1?

Yes _____     No _____

7) State's Exhibit 3K—Green & black butane lighter from pink & green container, Bedroom # 1?

Yes _____     No _____

8) State's Exhibit 3K—Red & clear butane lighter with green dots, "JAX", from pink & green container, Bedroom # 1?

Yes _____     No _____

9) State's Exhibit 3L—Maroon micro torch with "Jackie" printed on it, Bedroom # 1?

Yes _____     No _____

10) State's Exhibit 3M—Green, gold & black metallic pipe from pink & green container, Bedroom # 1?

Yes ——— No ———

11) State's Exhibit 3N—Silver eyeglass canister from purse in closet, Bedroom # 1?

Yes ——— No ———

12) State's Exhibit 3P—Glass pipe from silver eyeglass container, from purse in closet, Bedroom # 1?

Yes ——— No ———

13) State's Exhibit 5B—Small ziplock bag, with green dollar signs, containing crystalline substance, in silver "People" container in closet, Bedroom # 1?

Yes ——— No ———

14) State's Exhibit 5B—Small ziplock bag, clear (not with green dollar signs), containing crystalline substance, in silver "People" container in closet, Bedroom # 1?

Yes ——— No ———

15) State's Exhibit 6B—two partial matchbooks containing partially burnt handrolled cigarettes with green leafy substance from inside Nuprin container, in black waistpack from Bedroom # 2?

Yes ——— No ———

16) State's Exhibit 6C—Plastic Nuprin container from black waistpack in Bedroom # 2?

Yes ——— No ———

17) State's Exhibit 6D—clear ziplock bag containing green leafy substance from inside dresser drawer in Bedroom # 1?

Yes ——— No ———

18) State's Exhibit 7B—small clear ziplock bag containing green leafy substance from pocket of Raymond Tanaka?

Yes ——— No ———

You must be unanimous in finding at least one object to be drug paraphernalia as to Raymond Tanaka in order to find Defendant Raymond Tanaka guilty as to this offense.

## APPENDIX FOUR

If and only if you find the Defendant Jacqueline L. Tanaka guilty as to Count II, Unlawful Use of Drug Paraphernalia, you must answer the following question yes or no:

Did you unanimously find beyond a reasonable doubt that as to Jacqueline Tanaka any one of the following objects was drug paraphernalia:

1) State's Exhibit 3B—Coleman propane canister with torch attachments from kitchen?

Yes ——— No ———

2) State's Exhibit 3C—large grey hascher scale from kitchen?

Yes ——— No ———

3) State's Exhibit 3E—Silver "People" container from Bedroom # 1 closet?

Yes ——— No ———

4) State's Exhibit 3I—Glass pipe from jacket, Bedroom # 1 closet?

Yes ——— No ———

5) State's Exhibit 3J—Purple scale from pink & green container, Bedroom # 1?

Yes ——— No ———

6) State's Exhibit 3J—Grey scale from pink & green container, Bedroom # 1?

Yes ——— No ———

7) State's Exhibit 3K—Green & black butane lighter from pink & green container, Bedroom # 1?

Yes ——— No ———

8) State's Exhibit 3K—Red & clear butane lighter with green dots, "JAX", from pink & green container, Bedroom # 1?

Yes ——— No ———

9) State's Exhibit 3L—Maroon micro torch with "Jackie" printed on it, Bedroom # 1?

Yes ——— No ———

10) State's Exhibit 3M—Green, gold & black metallic pipe from pink & green container, Bedroom # 1?

Yes ——— No ———

11) State's Exhibit 3N—Silver eyeglass canister from purse in closet, Bedroom # 1?

Yes ——— No ———

12) State's Exhibit 3P—Glass pipe from silver eyeglass container, from purse in closet, Bedroom # 1?

Yes ——— No ———.

13) State's Exhibit 5B—Small ziplock bag, with green dollar signs, containing

crystalline substance, in silver "People" container in closet, Bedroom # 1?

Yes _____     No _____

14) State's Exhibit 5B—Small ziplock bag, clear (not with green dollar signs), containing crystalline substance, in silver "People" container in closet, Bedroom # 1?

Yes _____     No _____

15) State's Exhibit 6B—two partial matchbooks containing partially burnt handrolled cigarettes with green leafy substance from inside Nuprin container, in black waistpack from Bedroom # 2?

Yes _____     No _____

16) State's Exhibit 6C—Plastic Nuprin container from black waistpack in Bedroom # 2?

Yes _____     No _____

17) State's Exhibit 6D—clear ziplock bag containing green leafy substance from inside dresser drawer in Bedroom # 1?

Yes _____     No _____

18) State's Exhibit 7B—small clear ziplock bag containing green leafy substance from pocket of Raymond Tanaka?

Yes _____     No _____

You must be unanimous in finding at least one object to be drug paraphernalia as to Jacqueline Tanaka in order to find Defendant Jacqueline Tanaka guilty as to this offense.

## APPENDIX FIVE

If and only if you have found the Defendant Raymond T.H. Tanaka guilty as to Count III, Promoting a Detrimental Drug in the Third Degree, you must answer the following question yes or no:

Did you unanimously find beyond a reasonable doubt that Defendant Raymond Tanaka knowingly was in actual or constructive possession of any one of the following:

1) State's Exhibit 3M—Marijuana found in green, gold & black metallic pipe from pink & green container, Bedroom # 1?

Yes _____     No _____

2) State's Exhibit 6B—Marijuana found in two partial matchbooks containing partially burnt handrolled cigarettes with green leafy substance from inside Nuprin

container, in black waistpack from Bedroom # 2?

Yes _____     No _____

3) State's Exhibit 6D—Marijuana found in clear ziplock bag containing green leafy substance from inside dresser drawer in Bedroom # 1?

Yes _____     No _____

You must be unanimous in finding beyond a reasonable doubt that at least one of the above-listed objects contained an amount of marijuana and that Defendant Raymond Tanaka knowingly was in actual or constructive possession of it at the time of the offense, in order to find Defendant Raymond Tanaka guilty as to this offense.

## APPENDIX SIX

If and only if you have found the Defendant Jacqueline L. Tanaka guilty as to Count III, Promoting a Detrimental Drug in the Third Degree, you must answer the following question yes or no:

Did you unanimously find beyond a reasonable doubt that Defendant Jacqueline Tanaka knowingly was in actual or constructive possession of any one of the following:

1) State's Exhibit 3M—Marijuana found in green, gold & black metallic pipe from pink & green container, Bedroom # 1?

Yes _____     No _____

2) State's Exhibit 6B—Marijuana found in two partial matchbooks containing partially burnt handrolled cigarettes with green leafy substance from inside Nuprin container, in black waistpack from Bedroom # 2?

Yes _____     No _____

3) State's Exhibit 6D—Marijuana found in clear ziplock bag containing green leafy substance from inside dresser drawer in Bedroom # 1?

Yes _____     No _____

4) State's Exhibit 7B—small clear ziplock bag containing green leafy substance from pocket of Raymond Tanaka?

Yes _____     No _____

You must be unanimous in finding beyond a reasonable doubt that at least one of the above-listed objects contained an amount of marijuana and that Defendant Jacqueline Ta-

naka knowingly was in actual or constructive possession of it at the time of the offense, in order to find Defendant Jacqueline Tanaka guilty as to this offense.

### APPENDIX SEVEN

If and only if you have found Defendant Raymond T.H. Tanaka guilty as to Count IV, Promoting a Detrimental Drug in the Third Degree, you must answer the following question yes or no:

Did you unanimously find beyond a reasonable doubt that Defendant Raymond Tanaka knowingly was in actual or constructive possession of marijuana from any one of the following:

1) State's Exhibit 7B—small clear ziplock bag containing green leafy substance

form [sic] pocket or [sic] Raymond Tanaka?

Yes \_\_\_\_     No \_\_\_\_

You must be unanimous in finding beyond a reasonable doubt that the above-listed object contained an amount of marijuana and that Defendant Raymond Tanaka knowingly was in actual or constructive possession of it at the time of the offense, in order to find Defendant Raymond Tanaka guilty as to this offense in Count IV.